# Richmond

## Leon Meek v. O. Hopkins Graybeal and Another.

November 30, 1953.

Record No. 4114.

Present, All the Justices.

The opinion states the case.

*Royall & Proffitt* and *Harman & Harman*, for the plaintiff in error.

*Crockett & Gillespie*, for the defendants in error.

HUDGINS, C.J., delivered the opinion of the court.

Leon Meek in his motion for judgment filed against O. Hopkins Graybeal and William Ernest Smith, a minor eleven years of age, claimed damages for personal injuries sustained when struck by a jeep truck owned by Graybeal and driven by Smith. The jury returned a verdict for defendants on which judgment was entered. Meek obtained this writ of error to review that judgment.

Graybeal owned and operated a farm in Tazewell county. Smith lived with his father on another farm across the highway from this farm. Graybeal had been negotiating with one John D. Moreland to become a tenant on his farm. On Saturday, August 18, 1951, Moreland telephoned Graybeal that he was ready to move, and requested Graybeal to assist him in getting a truck to move his household goods. After lunch Graybeal started from his home in his jeep truck. He saw Smith on the highway, stopped and picked him up and continued to the Moreland home. Moreland was not there, but later they met him on the highway. The three went to Meek's home for the purpose of employing Meek to move Moreland's household goods from his home on the Boyd place to the Graybeal farm, for which Moreland agreed to pay him $10. Graybeal told Smith to ride in Meek's truck, to open and shut the gate for him and show him where Moreland lived. Graybeal and Moreland left in the jeep truck ahead of Meek and Smith. *En route* to the Moreland home, Graybeal agreed to haul some of the household goods, including potatoes which were in the garden near the house in which Moreland lived. When they arrived at their destination, Graybeal backed his jeep to within a few feet of Moreland's porch. A few minutes after Meek and Smith

arrived, Moreland received a message from Mr. Boyd who lived approximately 300 feet away, to come over and see him. Moreland declined to go. After the messenger left, the parties discussed Moreland's reason for not complying with the request. Within a few minutes the same messenger returned and told Graybeal that Mr. Boyd wanted to see him at the Boyd home. Before leaving Graybeal told Meek "when they get my jeep loaded * * * you (Meek) pull it out of the way," so that the Meek truck could be loaded from the same position. Graybeal testified that Meek replied that he had never driven a jeep but "maybe he could or something." Meek testified that he replied "I don't know anything about a jeep. I have never driven one and I would not want to mess with it." Graybeal said nothing else to anyone and left for the Boyd home.

After Meek, Moreland and Smith had loaded the jeep with part of the household goods, Moreland said he wanted to put the potatoes, which were "up in the garden," in the back of the jeep. This could be done more easily by moving the jeep up in the garden. At this time Moreland was on one side of the jeep and Meek on the other near the rear end. As Meek started up the steps to the back porch, the jeep, with Smith at the wheel, suddenly started backwards and caught Meek's legs between the rear end of the body of the truck and the porch, breaking the bones in both legs and permanently impairing their use. Graybeal was notified of the accident while at the Boyd home. He immediately telephoned for an ambulance in which Meek was taken to the hospital.

Plaintiff contends that the foregoing facts, considered with the prior relationship of Graybeal and Smith, are sufficient to establish the relationship of master and servant between them.

The additional uncontradicted testimony upon which plaintiff relies is substantially as follows:

Several weeks prior to the accident, Graybeal had broken his arm. His tenant had left him. During this period he

and his mother had employed the eleven year old Smith boy at various times to do odd jobs on the farm, such as driving sheep, mowing the lawn and the like. On one occasion, Graybeal had permitted the boy to drive the jeep in a field while he scattered litter from it. The boy moved the jeep a few feet at a time so that Graybeal could scatter the litter uniformly over the field. This was the only time that Graybeal had ever permitted the boy to drive the jeep. The Smith boy was active and energetic and, like most normal boys, was interested in machinery. He had been seen driving a truck or tractor on his father's farm.

On the day of the accident, Smith had been mowing the lawn for Graybeal's mother, who stopped him and told him to go to the field where Graybeal was working and give him Moreland's message. The boy finished mowing the lawn, Graybeal's mother paid him, and he went home. After lunch, as Graybeal started to the Moreland place, Smith was coming out of his father's driveway and was picked up by Graybeal. Nothing was said about the boy working for Graybeal that afternoon. Smith did not expect any compensation nor did Graybeal intend to pay him for anything else he might do that day.

Even if it be conceded that Graybeal employed Smith to open and shut the gate for Meek and to assist in the loading of Moreland's household goods on the jeep, it does not follow that when Smith under the circumstances stated, attempted to move the jeep, he was acting within the scope of his employment. Proof of the relationship of master and servant alone is not sufficient to make the master liable for the negligent act of the servant. The liability of a master for an act of a servant depends on whether the act was within the scope of the servant's employment and whether the act complained of was committed pursuant to the express or implied authority of the master. Whether an act by a servant is within the scope of his employment, ordinarily is determined by the relation the act bears to the employment. If the act is specifically or impliedly directed

by the master, or is an ordinary and natural incident or result of the directed act, it is within the scope of employment. *Porter* v. *South Penn Oil Co.*, 125 W. Va. 361, 24 S. E. (2d) 330, 333; *Cochran* v. *Michaels*, 110 W. Va. 127, 157 S. E. 173; 57 C. J. S., Master and Servant, sec. 570, p. 301.

The evidence most favorable to plaintiff tends to prove that Graybeal had employed Smith from time to time to do odd jobs on the farm; that on the afternoon in question, he was directed to open and shut gates and to assist in loading the jeep. This is a type of work that a normal eleven-year old boy would be expected to do, but his employment to do these specific things did not make him the agent of Graybeal in operating the motor truck. The tortious act in this case bears no relation to the purposes for which the eleven year old boy was employed, if he was employed.

"The doctrine of *respondeat superior* applies only when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged for the result of some neglect or wrong *at the time and in respect to the very transaction out of which the injury arose.*" *Nixon* v. *Rowland*, 192 Va. 47, 63 S. E. (2d) 757.

A truck is not an inherently dangerous instrumentality when operated by a normal licensed driver. It is a dangerous instrumentality when under the control of an inexperienced person or an immature eleven year old boy. Graybeal apparently acted on this knowledge, for when he left the scene to go to the Boyd home, he authorized Meek, a licensed driver of motor vehicles, to move the jeep. An experienced operator of a truck ordinarily would have no trouble in driving a jeep truck. The boy's attempt to move the jeep was not an act within the general scope of the purposes for which he was employed, if he was employed, nor was it done by virtue of such employment.

While some of the instructions given for defendant, Graybeal, over plaintiff's objection, on the relationship of master and servant, were erroneous, in view of our conclusion that

no verdict, other than one favorable to Graybeal, under proper instructions, could have been found, it is unnecessary to discuss the instructions involving this question. *Messick v. Barham*, 194 Va. 382, 73 S. E. (2d) 530.

█ The only other question presented is whether the evidence of plaintiff's contributory negligence was sufficient to make it a jury issue.

The court submitted the question to the jury by the following instruction: "The Court instructs the Jury that if you believe from the evidence in this case that just prior to the time Leon Meek was injured he told the Defendant, William Ernest Smith, to move the jeep truck, and if you further believe from the evidence that this statement of Leon Meek to William Ernest Smith together with the actions of Leon Meek just prior to the time of the accident constituted negligence on the part of Leon Meek and that his negligence contributed to or was the proximate cause of the injuries to Leon Meek then you shall find for defendant, William Ernest Smith, and the defendant Graybeal."

The only testimony tending to prove that Meek told the Smith boy to move the jeep emanates from Smith himself. He testified on direct examination that after the jeep was loaded with all the household goods Moreland desired to put thereon, Moreland said something about loading on the jeep the potatoes which were "up in the garden." "I believe Mr. Meek said—told me to * * * move the truck up to the garden." Smith said he got in the driver's seat of the jeep, started the engine, but did not see Meek, nor did he know where he was at the time. "All I know it just backed on Mr. Meek is the last thing I know." He admitted on cross-examination that prior to the date of the trial he had told Mr. Harman that he "did not remember anybody saying anything about moving the jeep." He was asked:

"Q. Both stories can't be true. You just said Mr. Meek told you to move the jeep.

"A. I said I thought he did.

"Q. You are just thinking today?

"A. Yes, sir.

\* \* \* \* \* \* \*

"Q. What makes you think today that Mr. Meek told you to pull that jeep off from there?

"A. I don't know."

The boy seemed to be confused on the witness stand. His testimony is not clear, positive or convincing. He answered many pertinent questions by saying "I don't know."

Meek's testimony to the contrary is clear and positive. He denied telling Smith to move the jeep. In fact, he said he had never seen the Smith boy before this occasion, though he did know his father. He did not know that Smith could drive a motor vehicle and did not expect him to attempt it. Meek's account of the accident is that when they had loaded the jeep with a part of the household goods, Moreland requested that he "leave the balance of the room there to put my apples and potatoes on." "I said: 'Where are your apples and potatoes?' And he said: 'Out here', and pointed to the garden." Meek testified that after Moreland made this statement he moved from the side of the jeep, but he did not know where Moreland went; that as he saw the boy start around toward the front of the jeep, he "stepped back on this rock and was in the act of stepping on the porch, or aimed to step up on the porch," when the jeep "started to come back with a right smart force," and "caught me between the porch and the end gate."

Moreland and his wife testified that when the boy got in the jeep they were nearby but they did not hear Meek or anyone else tell him to move it and that he attempted to move it without instructions from anyone.

On consideration of the entire testimony, our conclusion is that it is insufficient to convict plaintiff of contributory negligence and that the trial court committed reversible error in submitting this question to the jury.

The judgment exonerating O. Hopkins Graybeal from liability is affirmed and the judgment exonerating William Ernest Smith from liability is reversed and the case remanded for a new trial as to him if the plaintiff be so advised.

*Affirmed in part and reversed in part.*