# Richmond

CATHERINE CLINTON v. COMMONWEALTH OF VIRGINIA.

April 22, 1963.

Record No. 5558.

Present, All the Justices.

The opinion states the case.

*Calvin H. Childress (Herbert S. Reid, Jr.,* on brief), for the plaintiff in error.

*D. Gardiner Tyler, Assistant Attorney General (Robert Y. Button, Attorney General,* on brief), for the Commonwealth.

SNEAD, J., delivered the opinion of the court.

Catherine Clinton was indicted on two counts charging (1) that she did feloniously receive money from the earnings of Katherine R. Taylor, who was engaged in prostitution, for a consideration not deemed good and valuable in law in violation of § 18.1-208, Code of 1950, as amended, and (2) that she did unlawfully and feloniously place Katherine R. Taylor in a house of prostitution with intent that she should live a life of prostitution in violation of § 18.1-205. The jury found defendant guilty as charged under the first count and fixed her punishment at 5 years imprisonment and a fine of $500. The trial court overruled defendant's motion to set aside the verdict on the grounds that it was contrary to the law and the evidence and entered judgment in accordance with the verdict. We granted defendant a writ of error.

The defendant did not testify or offer any evidence in her behalf.

The evidence discloses that the defendant and Mrs. Katherine Taylor had been friends for quite a while, but had not seen each other "in years". In September 1961, pursuant to a telephone call made by defendant to Katherine Taylor the parties met in a restaurant in the city of Norfolk. There they had a "general conversation." They discussed their financial difficulties. Defendant revealed that she had a $1,000 fine to pay and Katherine Taylor said she had unpaid bills. Defendant stated that she had "some numbers that she could

contact and we could both make some money"; and that "she had the best clientele in town."

About 10 days later defendant went to Katherine Taylor's home to ascertain if she was still interested in the proposition. Later they toured different sections of the city to locate an apartment, but a location was not decided upon. Subsequently defendant advised her that she had rented an apartment at Ocean View. According to the landlord's desk clerk, defendant, who was accompanied by her husband, Harry Clinton, rented the one-room efficiency apartment at 9630 1st View street in the fictitious name of "Mr. and Mrs. Charles Morrison." Katherine Taylor testified that defendant called "different numbers" to let "the men know that she [defendant] was in business." When asked what her compensation was, she replied that the men paid $10 and that she received $5. Defendant received one-half because she had the "numbers" and had to pay the telephone bill and the "upkeep of the apartment." With one exception, all of the engagements Katherine Taylor had with men for sexual intercourse secured by defendant were had at the defendant's apartment. Prostitution was not a new experience for Katherine Taylor. She testified that she had formerly worked with defendant in Richmond.

The defendant's apartment was kept under surveillance by Norfolk police officers for four days, during which time they observed men visit the apartment. Part of the time officer Earl H. Beach was stationed in the adjoining apartment where he heard conversations and sounds which tended to show that the premises were used as a house of prostitution. This evidence was obtained by listening through the medicine cabinet in the wall dividing the two apartments and by an amplifying device "stuck in the wall."

On the morning of October 25, 1961, a man, later identified as S. N. Edwards, entered the apartment. The defendant arrived shortly thereafter. About 10 minutes later she and Betty Johnson left the premises and took a seat in Harry Clinton's automobile which was parked across the street in the Colonial Stores' parking lot. The police officers broke the glass in the door of the apartment, entered and found Katherine Taylor and Edwards undressed and preparing for sexual intercourse. They, along with defendant, her husband and Betty Johnson, were taken into custody and the indictment of defendant followed.

Here, defendant argues that the trial court erred (1) in refusing to declare a mistrial for admitting certain evidence of S. N. Edwards

which tended to show that she formerly operated a house of prostitution at another place; (2) in admitting evidence obtained in the adjoining apartment through the use of a mechanical listening device stuck in the wall which separated the two apartments; and (3) in refusing Instruction No. D-3. These questions will be discussed in the order mentioned.

S. N. Edwards testified that after a telephone conversation with defendant he went to her apartment. There the conversation between the two was "more or less a sparring deal" as he was attempting to identify himself and show he was not connected with law enforcement. He told her that the purpose of the visit was to meet her and look the place over as he had out-of-town friends who might be interested in contacting her.

On direct examination Edwards testified as follows:

"Q. Tell us what actually was said. * * *.

"A. All right; what I said first. I told her that I thought her name was familiar and I asked her if she operated in the other place in town.

"The Court: Operated what? * * *?

*　　*　　*　　*　　*　　*　　*

"A. Well, a house of prostitution, but those words weren't used. I didn't ask her.

"The Court: What did you use? How did you come to the understanding?

"A. Just what I said, sir, because it was obvious what was going on. It was just a line of conversation and it was taken, well, that both parties knew what was going on.

"She asked me if I had ever visited places down at East Ocean View and I told her I had not and she mentioned some other places, I believe, but I don't recall where it was and I said, no, that I had never visited any other places.

"Then I asked her, to prolong the conversation, if she was ever down at Lynnhaven.

"Mr. Reid: Your Honor, I object to this.

"The Court: Overruled.

"Mr. Reid: I save the point.

"A. She says, 'Yes, I did.' I said, 'Well, did you have a young girl working for you that had long hair and wore it up in a pony tail, about five years ago?' Then she mentioned some name which was vague to me because I was just carrying on a conversation and

Mrs. Clinton and this Betty were dressing, that is, putting on their hats, getting ready to go out."

The defendant now argues that the Commonwealth was thus allowed to present evidence that five years previously the defendant ran a house of prostitution; and that to compound the error further evidence was allowed tending to show that the defendant had a young girl working for her at that time.

But she made no such objection. Her objection was to the question asked her by Edwards whether "she was ever down at Lynnhaven." She offered no objection at all to the further question asked her by Edwards about a young girl working for her about five years ago, and she made no answer to that question.

· Rule 1:8 of the Rules of Court requires that the grounds for objection to the admissibility of evidence be stated with reasonable certainty, and if it does not appear from the record to have been so stated, "such objections will not be considered by this Court except for good cause shown or to enable this Court to attain the ends of justice." Here, counsel for defendant stated no reason for the objection to Edwards' testimony under question at the time it was made and offered no motion to strike such evidence. Counsel merely said "Your Honor, I object to this." After the objection was overruled, counsel stated "I save the point."

■ Moreover, Katherine Taylor thereafter testified without objection that defendant told her before the apartment was rented "she had the best clientele in town." She stated that defendant during her conversation with Edwards "described the other place she used to have and was talking about a girl with red hair." On cross-examination she testified that she had "worked with" defendant in Richmond. The time was not designated, but it must have been several years prior to this incident because she had previously stated that she had not seen defendant "in years."

Helen Buckridge said she had only one "paid date" in the apartment for which she received $10 and that she gave defendant one-half of it. At the time she was introduced to defendant, she stated that defendant told her "she needed money and she had a fine to pay and that she was going to start operations again if she could get some girls and get a place." There was no objection made to this testimony. The testimony of Helen Buckridge and Katherine Taylor clearly established that defendant had formerly operated such an illicit business.

Aside from the fact that the grounds for the objection to Edward's testimony were not stated at the time the objection was made, there has been no good cause shown why the requirement of Rule 1:8, *supra*, should not be applied. The evidence amply supports the conviction of the defendant and it is not necessary to disregard the requirement to state the grounds for objection with reasonable certainty in order to attain the ends of justice.

Here the Commonwealth was not seeking to prove independent and unconnected crimes in violation of the settled principle recently stated in *Fleenor* v. *Commonwealth*, 200 Va. 270, 275, 105 S. E. 2d 160. Evidence of other offenses may be admitted only when it shows motive, intent or guilty knowledge, or is connected with or leads up to the offense for which the accused is on trial, *Colvin* v. *Commonwealth*, 147 Va. 663, 669-70, 137 S. E. 476; or when there is only incidental disclosure of other offenses, *Barber* v. *Commonwealth*, 182 Va. 858, 867, 30 S. E. 2d 565. The evidence now claimed to be error came from the defendant in a conversation with Edwards in which the defendant's object, according to Edwards, was "to make sure I wasn't a member of the law or something like that" and, as stated, the only objection she made was to the question of whether she was ever down at Lynnhaven, to which she replied, "Yes, I did."

At the conclusion of the Commonwealth's evidence, defendant moved for a mistrial on the grounds that the testimony of Edwards relating to the former operation of a house of prostitution was prejudicial and improper and that there was no basis for its admission. This motion and others made at the time were overruled.

Whether a motion for a mistrial should be granted or refused rests within the sound discretion of the trial court, and the exercise of this discretion will not be disturbed unless abused. *Braxton* v. *Commonwealth*, 195 Va. 275, 279, 77 S. E. 2d 840; *Mack* v. *Commonwealth*, 177 Va. 921, 927, 15 S. E. 2d 62; 23A C. J. S., Criminal Law, § 1384, pp. 1027, 1028. Such a motion should be promptly made after a party has full knowledge of the facts and circumstances relied upon. *Crockett* v. *Commonwealth*, 187 Va. 687, 706, 707, 47 S. E. 2d 377.

We find that it was not reversible error for the trial court to admit Edward's testimony in question, and that the trial court did not abuse its discretion in overruling the motion for a mistrial at the conclusion of the evidence.

The defendant contends that the use by an officer of a

mechanical listening device stuck in the partition wall of an adjoining apartment in obtaining evidence constituted an unlawful search and seizure under the Fourth Amendment to the Constitution of the United States and Section 10 of the Constitution of the State of Virginia. Thus, she says that it was reversible error to admit such evidence.

*Goldman* v. *United States*, 316 U.S. 129, 62 S. Ct. 993, 86 L. ed. 1322, involved a situation where Federal agents placed a detectaphone against a partition wall and heard conversations between members of a conspiracy. There was no physical invasion of the premises occupied by defendant in obtaining this evidence. The court held that the questioned evidence was not inadmissible on the ground that use of the detectaphone was in violation of the Fourth Amendment.

The defendant relies heavily upon *Silverman* v. *United States*, 365 U.S. 505, 81 S. Ct. 679, 5 L. ed. 2d 734. There the petitioners were convicted on an indictment charging certain gambling offenses. Police officers were permitted to testify as to incriminating conversations between the petitioners which were overheard through an electronic listening device. This device was described as a microphone with a spike approximately one-foot long attached to it and it also consisted of an amplifier, earphones and a power pack. The officers entered a vacant house and inserted the spike several inches into a crevice of the party wall and made contact with a heating duct which served the adjoining house occupied by the petitioners. Such contact converted petitioners' entire heating system into a conductor of sound and conversations in the house could be heard through the earphones.

In holding that the use of the device violated the Fourth Amendment, the court observed: "* * * For a fair reading of the record in this case shows that the eavesdropping was accomplished by means of an unauthorized physical penetration into the premises occupied by the petitioners. * * *." It pointed out that in the *Goldman* case, *supra*, "the eavesdropping had not been accomplished by means of an unauthorized physical encroachment within a constitutionally protected area", and expressly declined to "re-examine" the case.

The *Silverman* case is factually different from the case at bar and it is not controlling. Officer Beach was asked if the instrument used was a spiked device and he responded "Yes, sir; small device." That is the only description given of it. The uncontradicted evidence is that it was not driven into the wall, but was "stuck in" it. This is the only evidence as to any penetration of the party wall and it is reasonable to assume that the penetration was very slight such as one made

by a thumb tack to hold the small device in place. The record does not show that the eavesdropping was accomplished through "an unauthorized physical penetration into the premises" occupied by defendant. Thus, we hold that the evidence obtained by means of the listening device did not constitute a violation of the Fourth Amendment to the Constitution of the United States or Section 10 of the Constitution of the State of Virginia, and that it was not error to admit such evidence.

■ Finally, defendant argues that the trial court erred in refusing to grant Instruction No. D-3. It reads:

"The Court instructs the jury that, while they may find a verdict upon the unsupported testimony of an accomplice, such evidence is to be received with great caution, and the Court, in this case, warns the jury of the danger of basing a verdict on the unsupported testimony of an accomplice.

"The Court further instructs the jury that the testimony of an accomplice must be received with great care and caution, and if you believe the testimony of an alleged accomplice was false, and that he was induced to testify falsely either by fear of punishment or hope of reward, you must disregard that testimony in its entirety."

The defendant says that she was entitled to this instruction because there was evidence that Katherine Taylor was an accomplice and no direct corroborating evidence that she received money from Katherine Taylor's earnings as a prostitute, and because Katherine Taylor had hope of reward of receiving a lighter sentence on a conviction for which she had not been sentenced.

As a result of the raid on defendant's premises three misdemeanor charges were placed against Katherine Taylor. At the time of defendant's trial two of the charges had been dismissed and she had been convicted on a plea of guilty to the third charge, but had not been sentenced as the case had been continued for that purpose. Captain Charles D. Grant testified that she had "been promised nothing" by the police.

If Katherine Taylor was not an accomplice, or if the verdict did not rest on her unsupported testimony, then it was not error to refuse the instruction.

"The general test to determine whether or not a witness is an accomplice is to determine whether he could be indicted for the same offense." *Guthrie* v. *Commonwealth*, 171 Va. 461, 469, 198 S. E. 481, and cases there cited.

*State of Arizona* v. *Green*, 60 Ariz. 63, 131 P. 2d 411, involved a question of whether the prosecuting witness whose earnings defendant was accused of receiving was an accomplice. In holding that the test to be applied was whether she could be indicted for the same crime, the court stated:

"* * * It is obvious that the prosecuting witness could not have been tried for receiving the earnings of a prostitute from herself. We think, therefore, that she was not an accomplice within the meaning of the statute, * * *." 60 Ariz. at pp. 67, 68, 131 P. 2d at p. 413.

Katherine Taylor, a prosecuting witness, could not have been legally indicted under § 18.1-208 for receiving money from her own earnings as a prostitute for a consideration not deemed good and valuable in law. Such being the case, under the principle enunciated in *Guthrie* v. *Commonwealth, supra,* she was not an accomplice. Moreover, her evidence was not unsupported, and the trial court was correct in refusing Instruction No. D-3.

For the reasons stated the judgment appealed from is

*Affirmed.*