# Richmond

### Susan B. Thomas v. Elsie P. Wingold and Clyde R. Thomas.

March 7, 1966.

Record No. 6115.

Present, All the Justices

*A. Christian Compton* (*John G. May, Jr.; May, Garrett, Miller, Newman & Compton,* on brief), for the plaintiff in error.

*Samuel H. Allen,* on brief, for defendant in error, Elsie P. Wingold.

*J. Segar Gravatt,* for defendant in error, Clyde R. Thomas.

SNEAD, J., delivered the opinion of the court.

Elsie P. Wingold, plaintiff, instituted an action at law against Clyde R. Thomas and Susan B. Thomas, defendants, to recover damages for personal injuries she sustained when the automobile she was operating was struck from the rear by a car owned by defendant Susan Thomas and operated by her son, defendant Clyde Thomas. The motion alleged, among other things, that at the time of the accident Clyde Thomas was acting within the scope of his authority as the servant, employee, or agent of Susan Thomas.

Defendant Susan Thomas moved the court to strike plaintiff's evidence as to her at the conclusion thereof and at the conclusion of all the evidence on the ground that it failed as a matter of law to show that Clyde Thomas was her agent acting within the scope of his employment at the time of the mishap, but the motions were overruled. The case was submitted to the jury, and a verdict was returned against both defendants in the amount of $23,142.35.

Susan Thomas then moved the court to set aside the verdict and to enter final judgment in her favor, or, in the alternative, to grant her a new trial upon all issues. This motion was likewise overruled, and judgment was entered on the verdict. We granted Susan Thomas a writ of error. Defendant Clyde Thomas did not seek an appeal, and the judgment against him has therefore become final.

The evidence was in dispute in some respects, but the jury by its verdict has resolved all such conflicts in favor of plaintiff, the prevailing party, and she is entitled to have the evidence stated in the light most favorable to her. *Beasley* v. *Bosschermuller,* 206 Va. 360, 361, 143 S. E. 2d 881. The pertinent facts may be summarized as follows:

Susan Thomas, the owner of a 1947 Chrysler automobile, lived alone in the town of Kenbridge. Clyde Thomas, her 36-year-old son, resided with his wife and children in the town of Victoria, which is about 6 miles distant from Kenbridge. Thomas was a competent driver. He had formerly held an operator's license and had driven

for "Uncle Sam" for three years while in the armed forces, but at the time of the mishap was not a licensed driver. In April, 1962, Susan Thomas became ill suddenly, and her physician advised that she be hospitalized in Richmond. She was concerned that if her car was left parked at her home during her absence thieves would remove parts from it. She was taken to the hospital in another vehicle, and en route she was permitted to stop at Thomas' home where she left instructions with his wife for him to "get somebody" to pick up her vehicle and drive it to his home for safekeeping.

Thomas secured a driver and the car was brought to his home where it remained in his custody until the time of the accident, which was a period of about two months. He used the vehicle twice to visit his mother while she was in the hospital, but on each trip it was driven by someone else. While in the hospital Susan Thomas told him not to drive her car and "to let it sit right in his yard." She also wrote him two letters reminding him not to drive the car. She did not want Thomas to drive because "he didn't have no operating license" and she did not "like to take no chances." Susan Thomas stated that she did not object to her son's use of the automobile provided he obtained a licensed operator to drive it. She added, however, that he was "not to run all about with it." The evidence is conclusive that Thomas was instructed by his mother not to drive her car at any time and that he understood her instructions.

Susan Thomas returned home from the hospital on May 23, 1962, and about one week later she "told" Thomas "to bring the car back." She did not mention a particular time when the vehicle was to be returned, but she did specifically instruct Thomas not to drive it himself. On June 2, Thomas contacted his friend, Chris Scott, a licensed operator, who agreed to drive the automobile to Kenbridge for the express purpose of returning it to Susan Thomas. Late that afternoon, Scott and Thomas, accompanied by their wives, undertook the six mile trip. Scott, who was driving, had been drinking, but there was no indication at first that he was under the influence of alcohol. After the parties had traveled about half-way to their destination "it looked like he [Scott] was driving fast", and "he ran off the road once". Thomas said to him: "Looks like you had a little too much to drink. You had better let me drive." Whereupon Thomas began driving. He testified that he knew at the time that he was violating his mother's instructions, but that when he "took over to drive the car" it was his purpose and intention to get "the car and me and everybody in it" safely to his mother in Kenbridge.

Thomas drove without incident until the vehicle reached the corporate limits of Kenbridge, even though he knew that the brakes "had been weak for some time" and had to be pumped in order to take effect. As he was proceeding eastwardly on Route 40, which is 44 feet wide, in a 35 mile zone in the vicinity of the corporate limits he observed plaintiff's car in front of him proceeding in the same direction. Plaintiff had intended to turn in at a supermarket or to "pull up on the curb and stop." She had her "turning light on" and was "moving over" toward the curb at a speed of about 5 miles an hour when her vehicle was struck from the rear by the automobile driven by Thomas traveling approximately 50 miles an hour. Plaintiff's vehicle was knocked forward into a "heavy duty" utility pole, and plaintiff sustained severe personal injuries.

Thomas testified that he saw plaintiff's car and the "brake light" and reduced his speed. He said: "[W]hen I applied my brakes the pedal went to the floor. I started pumping them and didn't have no brakes." The jury's verdict established that Thomas was guilty of negligence which was the sole proximate cause of the accident.

In her assignments of error pressed before us, defendant Susan Thomas contends that the trial court erred (1) in not sustaining the motions to strike plaintiff's evidence as to her; (2) in granting Instruction B; (3) in refusing to grant her motion for a mistrial because of the improper argument of counsel for defendant Clyde Thomas; and (4) in refusing to set aside the verdict as being contrary to the law and the evidence.

The dominant issue presented is whether the evidence shows, as a matter of law, that Clyde Thomas was not the servant, employee, or agent of defendant Susan Thomas acting within the scope of his employment at the time of the collision.

Susan Thomas summarizes her position in these words: Thomas "was not a paid employee of the defendant owner; he was doing a favor for his mother; the class of service he was asked to perform was one of safekeeping; he was prohibited from operating the vehicle; he had no authority, express or implied, to do so; he was, therefore, acting outside of the scope of his employment, if he was employed, at the time of this accident * * *."

On the other hand, Elsie Wingold and Clyde Thomas, the appellees, basically assert that the evidence shows that Susan Thomas directed Thomas to return the vehicle to her; that he was in the act of returning it when the accident occurred, and that since he was acting within the scope of his employment his disobedience of his mother's

instruction not to drive the automobile did not relieve his master, Susan Thomas, of liability.

In 57 C.J.S., Master and Servant, § 570(9), pp. 312-314, it is said:

"* * * The test of the master's responsibility for the acts of his servants is not whether such act was done in accordance with the instructions of the master to the servant, but whether it was done in the prosecution of the business that the servant was employed to do, and an act is regarded as 'authorized' in the legal sense if it is incidental to the performance of the duties intrusted to the servant even though it is in disobedience of the master's express orders and instructions. * * *

"* * * The fact that a servant disobeys the orders or instructions of his master in doing the act complained of is not determinative of whether he acted within the scope of his employment; it is well settled that such act may be within the scope of the servant's employment although in violation of the express instructions or orders of the master. If, however, the act forbidden is outside the class of service which the servant is employed to perform, the doing of the act is outside the scope of employment and no liability attaches to the master unless the rule forbidding the act has been openly, constantly, and habitually violated for such a length of time that the master in the exercise of ordinary care should have been apprised and informed of its nonobservance. * * *"

In 2 Mechem on Agency 2d, § 1881, p. 1462, the author states:

"The fact that the master may have anticipated the possibility of the particular act or omission now charged as negligence and expressly forbidden it or warned against it, while it may show whether the master deemed it within the scope of the servant's employment, will, as has been seen, not exonerate the master if the act be done in violation of his precautions, provided it be in fact found to be within the scope of the employment. In this respect the prohibitions stand upon the footing of mere instructions. The master directs the act but instructs the servant as to the manner of doing it. He may be liable for the act directed or for negligence in performing the act directed, even though the instructions as to methods are ignored.

"Where, however, the whole act or business—the so-called main act—is forbidden so that the servant is not servant as to that, this distinction would not apply."

For other authorities to the same effect see 12 M.J., Master and Servant, § 99, pp. 603, 604; Restatement of the Law, Agency 2d, § 230, p. 511; 35 Am. Jur., Master and Servant, § 559, p. 993; 5

Blashfield, Cyclopedia of Automobile Law and Practice, § 3009, pp. 290, 291.

In 51 A.L.R. 2d, § 21, pp. 76, 77, 78, it is said:

"The cases are in conflict as to whether an employer may be held liable for the negligent operation of his vehicle by a servant who is not authorized to use a car in his work. It has frequently been held that the scope of the employment did not extend to the use of such an unauthorized instrumentality, so that the master could not be held liable for the servant's negligence in operating it. [Citing cases, including *Meek* v. *Graybeal*, 195 Va. 381, 78 S. E. 2d 593, which will be discussed and distinguished, *infra*, from the present case.]

"However, other courts have taken the view that when the car was used in furtherance of the master's business purposes, and within the general area of the worker's employment, the master might be held liable, even though the employee had not been authorized to use the vehicle, or had been specifically instructed not to do so."

We are of opinion that the latter view is applicable to the present case, and for cases supporting it see *Nations* v. *Koch*, Tex. Civ. App., 265 S. W. 1105; *Rosenstein* v. *Bernhard & Turner Automobile Co.*, 192 Iowa 405, 180 N.W. 282; *Loux* v. *Harris*, 226 Mich. 315, 197 N.W. 494; *De Nezzo* v. *General Baking Co.*, 106 Conn. 396, 138 A. 127.

Here, at the time the accident occurred Thomas was performing the very act or class of service that he was instructed to perform, viz., returning the vehicle to his mother. It is true that he was specifically instructed not to operate the automobile, but he testified that due to the condition of Scott and the negligent manner in which Scott was driving he assumed control of the wheel for the purpose of getting "the car and me and everybody in it" safely to his mother in Kenbridge. Thus, in performing the act or class of service he was accomplishing the directed objective in a forbidden manner. The mere fact that he disobeyed Susan Thomas, his master, as to the manner in which the service was to be performed does not relieve her of liability for his negligence in performing it.

Defendant Susan Thomas relies heavily upon the case of *Meek* v. *Graybeal, supra,* 195 Va. 381 to support her contention that Thomas' operation of the automobile was not within the scope of his employment. In that case, the plaintiff, Meek, was injured when a "jeep truck" owned by defendant Graybeal and driven by his co-defendant, an 11-year-old boy named Smith, was backed up against him. The evidence, when considered in the light most favorable to

plaintiff, tended to show that Graybeal had employed Smith from time to time to do odd jobs on his farm and that on the afternoon of the accident he had directed the boy to open and shut gates and to assist in loading the truck.

We held that Smith's attempt to move the truck was not within the scope of his employment and that Graybeal was therefore not liable to Meek under the doctrine of *respondeat superior*. We said:

" 'The doctrine of *respondeat superior* applies only when the relation of master and servant is shown to exist between the wrongdoer and the person sought to be charged for the result of some neglect or wrong *at the time and in respect to the very transaction out of which the injury arose.' Nixon* v. *Rowland*, 192 Va. 47, 63 S.E. (2d) 757." 195 Va. at p. 385.

We are of opinion that the *Meek* case is factually distinguishable from the case at bar and is therefore not controlling. In *Meek*, Smith was an immature, 11-year-old boy and was only "directed to open and shut gates and to assist in loading the jeep." Unlike the present case, his tortious act bore no relation to the purposes for which he was employed, if he was employed at all, and his attempt to move the vehicle was not an act within the general scope of his employment. Here, Thomas was a 36-year-old man and a competent driver. He was in the act of returning the automobile to his mother as directed even though by driving it himself he was accomplishing the act in a forbidden manner.

Under the facts and circumstances of this case we cannot say, as a matter of law, that Clyde Thomas was not the servant, employee, or agent of Susan Thomas acting within the scope of his employment at the time of the accident. It was an issue for the jury to decide under proper instructions of the court.

This brings us to a consideration of Instruction B. which was offered by defendant Clyde Thomas and granted over the objection of defendant Susan Thomas. It provided:

"The Court instructs the jury that if you believe from a preponderance of the evidence that Susan B. Thomas requested Clyde R. Thomas to return her motor vehicle to her possession in Kenbridge and if you further believe that the accident in this case occurred while Clyde R. Thomas was returning said motor vehicle to Susan B. Thomas at her request and if you further believe by a preponderance of the evidence that Clyde R. Thomas at the time he took over as driver acted as a reasonably prudent man in so doing under the circumstances with which he was confronted, then the said Clyde R.

Thomas was the servant or agent of Susan B. Thomas at the time of the accident and Susan B. Thomas would be responsible for any negligence of Clyde R. Thomas which was the sole proximate cause of the collision in this case."

Susan Thomas contends that the instruction was erroneous because it did not correctly state the law; that "it was a finding instruction which omitted any reference to the issue of whether or not the operator was acting within the scope of his employment, if they found he was the servant or agent of the mother", and that it permitted the jury to find against her upon a partial view of the evidence.

The instruction did not contain the words "within the scope of his employment", but it stated sufficient elements under the evidence adduced to enable the jury to find from a preponderance of the evidence that Thomas was the servant or agent of his mother acting within the scope of his employment. It is noted that the instruction included a requirement that the jury find that Thomas was acting as "a reasonably prudent man" under the circumstances when he undertook to operate Susan Thomas' automobile. This requirement placed a heavier burden of proof upon plaintiff than the law demands because she was not required to show, in establishing the agency relationship, that such action of Thomas was "reasonably prudent". Thus, the instruction was more favorable to Susan Thomas than it should have been. Even though Instruction B. could have been more appropriately worded, we find no prejudicial error in it as far as Susan Thomas is concerned.

■ Finally, defendant Susan Thomas contends that the court erred in refusing to grant her motion for a mistrial because of the improper arguments of counsel for defendant Clyde Thomas. The record shows that during his closing argument to the jury counsel made these remarks:

"Now if I have some business that I want transacted, I can do one of two things; I can either do it myself or I can get somebody else to do it for me. I can act either personally or I can act through a representative and an agent but when I get ready to act through an agent, under the principles of law applicable, I am responsible for what that agent does while he is engaged in my business and on my behalf. That is the law and that is the only way that the public can be protected from the responsibility upon the principal for what his acts are. *If I could, with impunity, act through an agent and not*

*be responsible for what my agent did, I could protect myself from all of the responsibilities and fortuities of life simply by getting an irresponsible and insolvent agent to act in my behalf at all times and the law doesn't allow that.* When you select the power through an agent, you have the power to pick the agent to act through and you are responsible for what he does and that is what this instruction tells you." (Italics supplied.)

At the conclusion of these remarks, counsel for Susan Thomas said, "Judge, we will have a matter to take up with you later." After the arguments of counsel for all parties had been presented and after the jury had retired to consider its verdict, counsel for Susan Thomas moved the court to declare a mistrial on the ground that the reference to an "insolvent agent" by counsel for Clyde Thomas was prejudicial to her.

Susan Thomas advances this argument: "* * * [W]here mother and son were represented by different counsel, the effect of the reference to the 'insolvent agent' clearly gave the indication to the jury that Clyde Thomas was insolvent and that the only way that this injured plaintiff could collect any of her verdict would be for the jury to include Susan Thomas as one of the parties responsible."

In *Clinton* v. *Commonwealth*, 204 Va. 275, 280, 130 S. E. 2d 437, we said:

"Whether a motion for a mistrial should be granted or refused rests within the sound discretion of the trial court, and the exercise of this discretion will not be disturbed unless abused. * * *"

In the instant case we find that the court did not abuse its discretion in refusing to declare a mistrial. The questioned remarks of counsel, when considered as a whole, were not sufficient to constitute grounds for a mistrial. They did not specifically refer to defendant Clyde Thomas or defendant Susan Thomas and were in the nature of a hypothetical, abstract statement of general agency principles. Moreover, Susan Thomas relied solely upon her motion for a mistrial and did not at any time request the court to instruct the jury to disregard the remarks.

On the whole we find no reversible error in the judgment appealed from and it is

*Affirmed.*