COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Alston, Huff and Chafin
Argued at Alexandria, Virginia


DONNIE RAY EXLINE, SR.
                                                    MEMORANDUM OPINION* BY
v.        Record No. 1361-13-4                      JUDGE ROSSIE D. ALSTON, JR.
                                                         DECEMBER 16, 2014
COMMONWEALTH OF VIRGINIA


                    FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
                         Herman A. Whisenant, Jr., Judge Designate

              Mark D. Bailey, Assistant Public Defender (Office of the Public
              Defender, on briefs), for appellant.

              Aaron J. Campbell, Assistant Attorney General (Mark R. Herring,
              Attorney General, on brief), for appellee.


        Donnie Ray Exline, Sr. (appellant) appeals his conviction of possession of a firearm after

being convicted of a violent felony in violation of Code § 18.2-308.2.  On appeal, appellant

argues that the trial court erred "in denying Appellant's motion for a mistrial and his subsequent

motion to set aside the verdict when the Commonwealth's Attorney made improper statements

during her rebuttal closing argument that Appellant bore a burden to produce evidence of his

innocence and such statements were so prejudicial to Appellant that he was denied his

fundamental right to a fair trial and constituted plain error," and "in denying Appellant's motion

for a mistrial and his subsequent motion to set aside the verdict when the Commonwealth's

Attorney made improper statements during her rebuttal argument that were so prejudicial to

Appellant to constitute plain error, because they remained in the minds of the jurors and

_____
        *Pursuant to Code § 17.1-413, this opinion is not designated for publication.

influenced their verdict resulting in the denial of Appellant's fundamental right to a fair trial."
We disagree and therefore affirm appellant's conviction.

## I. Background[1]

The evidence indicated that appellant was living with his son, Donnie Exline, Jr. ("D.J.") and D.J.'s fiancée, Allison Meyers, on October 14, 2012, in Fauquier County. At appellant's May 30, 2013 trial, D.J. testified that around midnight on October 13-14, 2012, he and appellant left the house to go to 7-Eleven to return a movie D.J. rented from the Redbox. D.J. drove Allison's vehicle, and appellant was in the passenger seat. D.J. testified that shortly after leaving the house, he informed appellant that there was a .22 rifle on the floor in the backseat of the car because he knew that, as a convicted felon, his father could not "be around firearms." According to D.J., appellant responded "Okay." The gun was in the car because D.J. had gone target shooting earlier that day. It was not locked up or in a case or other type of box. There was also a spotlight in the car and ammunition in the glove box.

D.J. testified that after stopping at Redbox, appellant told him to turn on to Lucky Hill Road and as they drove down the road, they saw some deer in a field. Appellant then rolled down the passenger window and shot out the window at the deer. D.J. testified that he told appellant that "it wasn't a good idea [to shoot]" and that appellant didn't really say anything in response. D.J. stated that the car was in the road with the front facing Route 28 and that appellant fired a couple rounds, then waited a couple minutes, and then fired another couple of rounds. In between the first and second set of shots, D.J. turned around, "came back up and made another U-turn."

---

[1] As the parties are fully conversant with the record in this case and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the disposition of this appeal.

D.J. denied ever firing any shots out of the vehicle. D.J. admitted that he had previously been convicted of petit larceny and credit card fraud. He was on probation on October 14, 2012, and had suspended time on the previous convictions that would have been revoked if he had been convicted of another charge. D.J. also admitted that when police officers first stopped the vehicle, he lied to them and said that he and appellant were going to see a friend. Later he told the officers that appellant fired the rifle. Photographs of the gun in D.J.'s vehicle and allegedly fired by appellant were admitted into evidence.

In addition to D.J.'s testimony, the trial court heard testimony from Susan Wenzel, who lived on Lucky Hill Road and heard the gunshots and called 911 on October 14, 2012. The trial court also heard testimony from Corporal Steven Chad Brubaker of the Fauquier County Sheriff's Office who responded to Ms. Wenzel's 911 call and initiated a traffic stop of D.J.'s vehicle. Corporal Brubaker stated that he spoke to D.J. and to appellant and that at first, appellant stated that he did not know what had happened and that he did not know the rifle was in the vehicle. Corporal Brubaker acknowledged that D.J. initially lied to him about knowing who fired the shots before admitting that it was appellant. Corporal Brubaker collected the box of ammunition, the spotlight, and the rifle as evidence, and sent the rifle to the lab to be tested for functionality but not for DNA or fingerprints because he "felt that [he] had sufficient evidence to prosecute the crime at that point without asking for DNA or fingerprints on it." Corporal Brubaker also decided not to use a gunshot residue kit he had with him that night because he felt he had sufficient evidence "with the information [he] had as well as where the rifle was located within the vehicle."

Julian Mason, Jr. from the Virginia Department of Forensic Sciences testified that he recognized the photographs of the rifle in D.J.'s vehicle on October 14, 2012, and identified the

serial number. Mason examined and test-fired the rifle and determined that it was functional. Mason's report was admitted into evidence.

In his defense, appellant testified that he was previously convicted of felonies "[t]en or eleven" times. Those convictions included six involving moral turpitude. Appellant stated that on the night in question, after stopping at Redbox, D.J. drove to a new house that D.J. and his fiancée were going to move into that was off of Route 28 and then he drove down to Lucky Hill Road. Appellant stated that D.J. drove down the road, saw a deer beside the road, turned around in the ditch, and drove up by the field with his headlights towards the deer. Appellant testified that D.J. then pulled out the rifle, leaned across appellant, and shot at the deer through the passenger window. Appellant testified that he did not shoot the gun or handle the ammunition and that when D.J. started shooting, he leaned back in his seat. Appellant also testified that he told D.J. to stop shooting and that he could not be around firearms, but that D.J. "was wanting to get that deer." Appellant stated that he initially told Corporal Brubaker that he didn't know anything about the gun or what happened because he did not want to see his son go to jail.

During closing arguments, appellant's counsel argued:

> As you heard, [the Commonwealth] submitted the rifle to test its functionality because that could be used against somebody. But while they had that rifle in their possession, they didn't submit it for fingerprints. They didn't submit it for DNA. They didn't submit [appellant's] clothes or the son's clothes for the gunshot powder. As you heard the officer testify, he pretty much took the word of the son and said, I have enough to make my case now.

> Well, what about [appellant's] rights? Isn't he due the opportunity, had the Commonwealth had it, to submit the rifle for fingerprints? If the Commonwealth had submitted the rifle for fingerprints, don't you feel that you would have a clearer picture today as to whether or not to find [appellant] guilty? He's testified that his fingerprints would not even be on the gun. You didn't hear the officer testify that we couldn't submit it for fingerprints, we couldn't submit it for DNA, they just didn't. They didn't follow through because he thought he had enough because this man has a prior criminal history.

\*     \*     \*     \*     \*     \*     \*

Now, again, I will pose that [appellant] was entitled during this process to have the Commonwealth, through its officers, explore every avenue of innocence to make sure that they had the right person, not just we think we've got enough so we're going to call it a day. He had the - - the officer had the GSR, the gunshot residue kit, in the car. You heard him testify to that. You heard him testify that he did not use it, and testified that it may have shown up on different items, but we don't know the degree. It clearly could have showed something.

But the DNA and fingerprint analysis, there was nothing here saying they couldn't do that. We're not talking about the firearm being lost or gone, they had it. They had it all this time. It was never tested once for fingerprints or DNA. They didn't do it. It wasn't worth it. [Appellant] wasn't worth it at that point to the Commonwealth and to the officer.

In rebuttal, the Commonwealth argued in part:

Now, [appellant's counsel] wants you to believe that [showing fingerprint or DNA evidence is] part of my burden and that I have to show you that to find [appellant] guilty, but I don't.

But even more important than that, the defendant didn't send [the rifle] off to the lab either. The defendant didn't ask for it to be tested. The defendant didn't show that his fingerprints or his DNA isn't on it.

Also in rebuttal and subsequent to the trial court's instruction to the jury on the principle

of possession, the Commonwealth argued in part:

Now, let's assume, just for the sake of argument, you don't believe D.J. Let's assume that you think D.J.'s the one that fired all of those shots. Here's the kicker. You still have to find the [appellant] guilty of possessing the firearm. You have to. You're bound to, because the second –- according to him, the second that he knew about that would have been when D.J. fired those first shots. He's got to get out of there. He can't – he knows what it is, and he's able to exercise dominion and control over it.

- 5 -

The Commonwealth continued for about another minute of argument before resting. At the conclusion of the Commonwealth's rebuttal, the following dialogue took place between the trial court and counsel:

> [TRIAL COURT]: Thank you.
>
> Ladies and gentlemen, at this time you can go back and start with your deliberations. You'll be given the instructions that I have read to you, you'll be given the exhibits –
>
> [APPELLANT'S COUNSEL]: Your Honor, I would have to ask that - -
>
> [TRIAL COURT]: Just a moment, counsel. Have a seat.
>
> [The jurors were excused from the courtroom]
>
> [TRIAL COURT]: Counsel, why did you interrupt the court?
>
> [APPELLANT'S COUNSEL]: Your Honor, I was trying not to interrupt counsel during her closing but, Your Honor, I would have a motion at this point and it would be a motion for a mistrial.

Appellant's counsel then argued for a mistrial based on the Commonwealth's rebuttal argument that appellant contended shifted the burden of proof. The trial court denied the motion and ruled "I think it's fair argument. In your argument you talked about it, they didn't [have the firearm tested for DNA or fingerprints]. They simply said that you didn't. That's a fair argument." The trial court noted that it did not think that the Commonwealth shifted the burden to the defense because the burden remained on the Commonwealth to prove the case beyond a reasonable doubt. The trial court also noted that the law did not require the Commonwealth to show fingerprint or DNA matches but that appellant's closing argument implied the opposite. Therefore, the trial court found that appellant opened the door to the Commonwealth's argument in rebuttal.

At the conclusion of the trial, the jury convicted appellant of possession of a firearm after having been convicted of a violent felony but found appellant not guilty of shooting from a

- 6 -

vehicle. On June 26, 2013, the trial court sentenced appellant to five years' incarceration. Appellant filed a motion to set aside the verdict on July 12, 2013, which the trial court denied after a hearing on July 17, 2013. This appeal followed.

## II. Analysis

As a preliminary matter, the Commonwealth argues that appellant failed to preserve both assignments of error and that they are therefore barred from consideration by Rule 5A:18. Rule 5A:18 provides, in relevant part that "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." "The purpose of the contemporaneous objection rule 'is to avoid unnecessary appeals by affording the trial judge an opportunity to rule intelligently on objections.'" Maxwell v. Commownealth, 287 Va. 258, 264-65, 754 S.E.2d 516, 519 (2014) (quoting State Highway Comm'r v. Easley, 215 Va. 197, 201, 207 S.E.2d 870, 873 (1974)). "For the circuit court to rule intelligently, the parties must inform the circuit court 'of the precise points of objection in the minds of counsel.'" Id. at 265, 754 S.E.2d at 519 (quoting Gooch v. City of Lynchburg, 201 Va. 172, 177, 110 S.E.2d 236, 239-40 (1959)). "For an objection to meet the requirements of Rule 5A:18, it must also 'be made . . . at a point in the proceeding when the trial court is in a position, not only to consider the asserted error, but also to rectify the effect of the asserted error.'" Id. (quoting Scialdone v. Commonwealth, 279 Va. 422, 437, 689 S.E.2d 716, 724 (2010)).

The record reveals that the Commonwealth made the allegedly improper statements during rebuttal, approximately a minute or so before concluding its argument. At the conclusion of the Commonwealth's rebuttal, as the trial court began to address the jury, defense counsel interrupted and stated, "Your Honor, I would have to ask that - -," when he was cut off and told by the trial court "Just a moment, counsel. Have a seat." On brief, appellant states that "Counsel

for Appellant, being familiar with the presiding judge's courtroom practices, recognized that the tone employed and the manner in which the judge commanded him to sit down was not a suggestion, but an order." The trial court did not allow appellant to state and argue his full objection to the Commonwealth's argument until it dismissed the jury to deliberate and "if a party has no opportunity to object to a ruling or order at the time it is made, the absence of an objection shall not thereafter prejudice him on motion for a new trial or on appeal." Code § 8.01-384(A). We are satisfied that on the facts of this case, appellant sufficiently preserved his objections. Counsel promptly objected after the allegedly improper statements were made and before the jury retired to deliberate. The trial court was provided an opportunity to "'consider the asserted error [and] rectify the effect of the asserted error.'" Maxwell, 287 Va. at 265, 754 S.E.2d at 519. The fact that the trial court declined to hear the specifics of appellant's objection prior to dismissing the jury for deliberations was outside of appellant's control and cannot now be held to bar appellant's issues on appeal. Accordingly, this Court is in the position to address the merits of the appeal.

"We review a challenge to a circuit court's denial of a mistrial motion under established principles. The decision whether to grant a mistrial motion is a matter submitted to the circuit court's sound discretion." Lewis v. Commonwealth, 269 Va. 209, 213, 608 S.E.2d 907, 909 (2005) (citing Lowe v. Cunningham, 268 Va. 268, 272, 601 S.E.2d 628, 630 (2004); Burns v. Commonwealth, 261 Va. 307, 341, 541 S.E.2d 872, 894 (2001); Cheng v. Commonwealth, 240 Va. 26, 40, 393 S.E.2d 599, 607 (1990)). "In a criminal case, when defense counsel makes a motion for a mistrial based on an allegedly prejudicial remark or question by the prosecutor, the circuit court must make a factual determination whether a defendant's right to a fair trial has been prejudiced, thereby requiring a new trial." Id. at 214, 608 S.E.2d at 910 (citing Spencer v. Commonwealth, 240 Va. 78, 95, 393 S.E.2d 609, 619 (1990); LeVasseur v. Commonwealth, 225

Va. 564, 589, 304 S.E.2d 644, 657 (1983)). "When a circuit court has determined that a defendant's rights have not been prejudiced and has denied his motion for a mistrial, our appellate review is confined to an inquiry whether the circuit court abused its discretion and, thus, was wrong as a matter of law." Id. (citing Burns, 261 Va. at 342, 541 S.E.2d at 895; Cheng, 240 Va. at 40, 393 S.E.2d at 607; Thomas v. Wingold, 206 Va. 967, 975, 147 S.E.2d 116, 122 (1966)).

We find Johnson v. Commonwealth, 236 Va. 48, 372 S.E.2d 134 (1988), and Robinson v. Commonwealth, 165 Va. 876, 183 S.E. 254 (1936), to be particularly useful guidance in this case. During closing, appellant's counsel repeatedly pointed out that the Commonwealth decided not to test the gun for fingerprints or DNA. In response, the Commonwealth essentially argued "well, neither did Appellant." The defendants in Johnson and Robinson made similar arguments when the Commonwealth commented on the defendants' failure to testify while denying the charges and failure to call available, allegedly corroborating witnesses, respectively, in closing. In both instances, the Supreme Court held that such commentary was appropriate when invited by the defendants' arguments.

Specifically in Johnson, defense argued in closing of defendant's trial for breaking and entering: "The question, however, is who did it? The Commonwealth says that it was [defendant]. [Defendant] says it wasn't. And, the twelve of you have to decide whether the Commonwealth has met its burden of proving that it was [defendant] beyond a reasonable doubt." 236 Va. at 49, 372 S.E.2d at 135. In rebuttal, the prosecutor argued "when [defense counsel] stood up here to argue what did he tell you. He says, the police tell you that [defendant] committed that breaking and entering. [Defendant] said that he didn't. Have you heard from that witness stand any evidence of . . . [defendant] saying, 'I didn't do it.'" Id. at 50, 372 S.E.2d at 135. Defense counsel objected and argued that "'it is not open to comment as to whether or

not [defendant] takes the stand.'" Id.  The trial court overruled the objection and found that defense counsel "'"opened it up"'" but granted an instruction reminding the jury that the defendant did not have to testify and that his decision not to testify could not be considered by the jury.  Id.

The Supreme Court held in relevant part that "[i]nsofar as the prosecutor's comments arguably could be characterized as a reference to [defendant]'s failure to take the witness stand, we will apply the invited error doctrine . . . ."  Id. at 52, 372 S.E.2d at 137.  "[A] remark by a prosecutor, otherwise improper, 'may become proper under the invited error doctrine when the area has been opened to fair comment by the argument and comment of defense counsel or of a *pro se* defendant.'"  Id. at 51, 372 S.E.2d at 136 (quoting Lincoln v. Commonwealth, 217 Va. 370, 373, 228 S.E.2d 688, 690 (1976)).  The Court noted that

> "It is one thing to hold . . . , that the prosecutor may not treat a defendant's exercise of his right to remain silent at trial as substantive evidence of guilt; it is quite another to urge, as defendant does here, that the same reasoning would forbid the prosecutor from fairly responding to an argument of the defendant by adverting to that silence."

Id. at 52, 372 S.E.2d at 136 (quoting United States v. Robinson, 485 U.S. 25, 34 (1988)).

Similarly in Robinson, defendant defended his charge of driving on a revoked license by stating that his friend, Payne, was the driver, though defendant did not call Payne to testify on his behalf.  165 Va. at 880, 183 S.E. at 256.  Defendant was later indicted for committing perjury at his trial and at trial on the perjury charge, the Commonwealth proved that Payne was not called as a witness at the previous trial, and commented in closing argument on defendant's failure to call Payne as a corroborating witness.  Id. at 880, 183 S.E. at 256.  On appeal, defendant argued that the Commonwealth's argument was improper.  Id.  The Supreme Court, citing Chahoon v. Commonwealth, 61 Va. (20 Gratt.) 733, 797 (1871), noted that it had previously held that "the failure or neglect of an accused to produce evidence within his power might be considered by the jury in connection with the other facts proved in the case."  Id. (citations omitted).  Therefore,

- 10 -

the Supreme Court affirmed defendant's convictions and held that "[defendant's] failure to call Payne as a witness, and the failure of the latter to testify in Police Court, was a circumstance to be considered by the jury, and was a legitimate subject of comment by the Commonwealth's attorney." Id. at 881, 183 S.E. at 256. "The fact that Payne was not called raised the natural presumption that he (Payne) would not have corroborated (defendant)." Id. at 880, 183 S.E. at 256.

Likewise in this case, appellant's counsel repeatedly argued that the Commonwealth provided no fingerprint or DNA evidence tying appellant to the gun fired on the night in question. The Commonwealth merely highlighted that appellant had the ability to have the same tests performed on the gun, but chose not to do so. Appellant's failure to conduct any testing of the gun himself, despite arguing that the testing would have proved him innocent, was a "circumstance to be considered by the jury, and was a legitimate subject of comment by the Commonwealth's attorney." Id. at 881, 183 S.E. at 256. Therefore, we hold that the trial court did not err in denying appellant's motion for a mistrial and motion to set aside the verdict.

In his second assignment of error, appellant argues that the trial court erred in denying his motion for a mistrial and motion to set aside the verdict based on the Commonwealth's rebuttal argument regarding constructive possession, which allegedly imparted on the jury a requirement to find guilt simply where appellant had knowledge of the firearm and any proximity to it, which appellant argues is contrary to the law.[2] Specifically, the Commonwealth argued:

> Now, let's assume, just for the sake of argument, you don't believe
> D.J. Let's assume that you think D.J.'s the one that fired all of
> those shots. Here's the kicker. You still have to find the
> [appellant] guilty of possessing the firearm. You have to. You're
> bound to, because the second –- according to him, the second that
> he knew about that would have been when D.J. fired those first

---

[2] We note that appellant concedes that the trial court properly instructed the jury on the element of possession.

shots.  He's got to get out of there.  He can't – he knows what it is, and he's able to exercise dominion and control over it.

Appellant contends that the Commonwealth's characterization of constructive possession was misleading in that it instructed the jury that it "must convict Appellant if they conclude that he remained in the vehicle after obtaining knowledge that a rifle was also in the vehicle."

In Smallwood v. Commonwealth, 278 Va. 625, 688 S.E.2d 154 (2009), Smallwood was convicted of felony possession of a firearm.  She was driving her friend Barnett's vehicle around 1:00 a.m. when officers stopped her for a "road check."  During the check, one of the officers noticed a .38 revolver, which belonged to Barnett, sitting on the console between Smallwood and Barnett (who was sitting in the passenger seat of the vehicle and not driving as she had been drinking).  Id. at 627-28, 688 S.E.2d at 155.  Smallwood argued that the Commonwealth failed to prove that she exercised dominion or control over the firearm.  Id. at 629, 688 S.E.2d at 156.  In affirming, the Supreme Court noted that "[i]n a joint constructive possession case, the focus is on the 'acts, statements, or conduct *by the defendant* or other facts and circumstances proving that the defendant was aware of the presence and character of the firearm and that the firearm was *subject to his dominion and control*.'"  Id. at 632, 688 S.E.2d at 157 (quoting Bolden v. Commonwealth, 275 Va. 144, 148, 654 S.E.2d 584, 586 (2008)).  The Court noted that the vehicle was small, the firearm was "in plain view" resting on a console beside Smallwood's leg, and "[i]n an instant, Smallwood could have actual, exclusive possession of the firearm and Smallwood's access to the firearm was not restricted in any way."  Id. at 631, 688 S.E.2d at 157.  Therefore, the evidence was sufficient to prove that Smallwood possessed the firearm.

In the present case, the evidence was clear that the gun was located on the floorboard of the backseat of D.J.'s vehicle within appellant's reach.  Further, appellant admitted that he remained in the vehicle once aware of the gun's presence and location.  Therefore, just as Smallwood was in "immediate proximity" to the gun and "was aware of the presence and

character of the firearm[,]" the gun in the present case was "subject to [appellant's] dominion and control" and the Commonwealth did not err by arguing that once he became aware of its presence in the vehicle, appellant could be found to have been in constructive possession of the gun.  Id. at 632, 688 S.E.2d at 157.

For these reasons, we hold that the trial court did not err in denying appellant's motion for a mistrial or his motion to set aside the verdict.

Affirmed.