## JOSEPH A. BAILEY

### v.

## COMMONWEALTH OF VIRGINIA

Record No. 840357

Decided April 26, 1985, at Richmond

Present: All the Justices

*David J. Damico; Martin R. Willis (Willis, Damico & Apgar*, on briefs), for appellant.

*Margaret Poles Spencer, Assistant Attorney General (Gerald L. Baliles, Attorney General; Russell C. Williams, Assistant Attorney General*, on brief), for appellee.

CARRICO, C.J., delivered the opinion of the Court.

Indicted for involuntary manslaughter, Joseph A. Bailey was convicted in a jury trial and sentenced in accordance with the jury's verdict to serve six months in jail and to pay a fine of $1,000. The question on appeal is whether it was proper to convict Bailey of involuntary manslaughter when, in his absence, the victim was killed by police officers responding to reports from Bailey concerning the victim's conduct.

The death of the victim, Gordon E. Murdock, occurred during the late evening of May 21, 1983, in the aftermath of an extended and vituperative conversation between Bailey and Murdock over their citizens' band radios. During the conversation, which was to be the last in a series of such violent incidents, Bailey and Murdock cursed and threatened each other repeatedly.

Bailey and Murdock lived about two miles apart in the Roanoke area. On the evening in question, each was intoxicated. Bailey had consumed a "twelve-pack" of beer and a "fifth of liquor" since mid-afternoon; a test of Murdock's blood made during an autopsy showed alcoholic content of ".271% . . . by weight." Murdock was also "legally blind," with vision of only 3/200 in the right eye and 2/200 in the left. Bailey knew that Murdock had "a problem with vision" and that he was intoxicated on the night in question.

Bailey also knew that Murdock owned a handgun and had boasted "about how he would use it and shoot it and scare people off with it." Bailey knew further that Murdock was easily agitated and that he became especially angry if anyone disparaged his war hero, General George S. Patton. During the conversation in question, Bailey implied that General Patton and Murdock himself were homosexuals.

Also during the conversation, Bailey persistently demanded that Murdock arm himself with his handgun and wait on his front porch for Bailey to come and injure or kill him. Murdock responded by saying he would be waiting on his front porch, and he told Bailey to "kiss [his] mother or [his] wife and children goodbye because [he would] never go back home."

Bailey then made two anonymous telephone calls to the Roanoke City Police Department. In the first, Bailey reported "a man . . . out on the porch [at Murdock's address] waving a gun around." A police car was dispatched to the address, but the officers reported they did not "see anything."

Bailey called Murdock back on the radio and chided him for not "going out on the porch." More epithets and threats were exchanged. Bailey told Murdock he was "going to come up there in a blue and white car"[1] and demanded that Murdock "step out there on the . . . porch" with his gun "in [his] hands" because he, Bailey, would "be there in just a minute."

---

[1] Bailey owned a blue and white vehicle; the police vehicles were also blue and white.

Bailey telephoned the police again. This time, Bailey identified Murdock by name and told the dispatcher that Murdock had "a gun on the porch," had "threatened to shoot up the neighborhood," and was "talking about shooting anything that moves." Bailey insisted that the police "come out here and straighten this man out." Bailey refused to identify himself, explaining that he was "right next to [Murdock] out here" and feared revealing his identity.

Three uniformed police officers, Chambers, Beavers, and Turner, were dispatched to Murdock's home. None of the officers knew that Murdock was intoxicated or that he was in an agitated state of mind. Only Officer Beavers knew that Murdock's eyesight was bad, and he did not know "exactly how bad it was." Beavers also knew that Murdock would get "a little 10-96 (mental subject) occasionally" and would "curse and carry on" when he was drinking.

When the officers arrived on the scene, they found that Murdock's "porch light was on" but observed no one on the porch. After several minutes had elapsed, the officers observed Murdock come out of his house with "something shiny in his hand." Murdock sat down on the top step of the porch and placed the shiny object beside him.

Officer Chambers approached Murdock from the side of the porch and told him to "[l]eave the gun alone and walk down the stairs away from it." Murdock "just sat there." When Chambers repeated his command, Murdock cursed him. Murdock then reached for the gun, stood up, advanced in Chambers' direction, and opened fire. Chambers retreated and was not struck.

All three officers returned fire, and Murdock was struck. Lying wounded on the porch, he said several times, "I didn't know you was the police." He died from "a gunshot wound of the left side of the chest." In the investigation which followed, Bailey stated that he was "the hoss that caused the loss."

In an instruction granted below and not questioned on appeal, the trial court told the jury it should convict Bailey if it found that his negligence or reckless conduct was so gross and culpable as to indicate a callous disregard for human life and that his actions were the proximate cause or a concurring cause of Murdock's death. Bailey concedes that the evidence at trial, viewed in the light most favorable to the Commonwealth, would support a finding that his actions constituted negligence so gross and culpable as

to indicate a callous disregard for human life. He contends, however, that he "did not kill Murdock."

Bailey argues that his conviction can be sustained only if he was a principal in the first degree, a principal in the second degree, or an accessory before the fact to the killing of Murdock. The Attorney General concedes that Bailey was not a principal in the second degree or an accessory before the fact, but maintains that he was a principal in the first degree.

Countering, Bailey argues he was not a principal in the first degree because only the immediate perpetrators of crime occupy that status. Here, Bailey says, the immediate perpetrators of Murdock's killing were the police officers who returned Murdock's fire.[2] He was in his own home two miles away, Bailey asserts, and did not control the actors in the confrontation at Murdock's home or otherwise participate in the events that occurred there. Hence, Bailey concludes, he could not have been a principal in the first degree.

We have adopted the rule in this Commonwealth, however, that one who effects a criminal act through an innocent or unwitting agent is a principal in the first degree. *Collins* v. *Commonwealth*, 226 Va. 223, 233, 307 S.E.2d 884, 890 (1983) (undercover policewoman ruled innocent agent to collect fees for defendant charged with pandering); *Dusenbery* v. *Commonwealth*, 220 Va. 770, 772, 263 S.E.2d 392, 393 (1980) (person who acts through an innocent or unwitting agent is a principal in first degree, but not in rape cases). And, in *State* v. *Benton*, 276 N.C. 641, 653, 174 S.E.2d 793, 801 (1970), cited with approval in *Collins*, the court stated that the innocent-agent rule applies even though the person accused was not present at the time and place of the offense.

Bailey argues that the present case is distinguishable from *Collins*. There, Bailey says, the accused and the undercover policewoman were working in concert, pursuing a common goal of soliciting and collecting fees for sexual favors; although the policewoman was innocent of the crime of pandering because she had no intent to perform sexual acts, the accused was guilty nevertheless because the fees were collected on his behalf. Here, Bailey asserts, he and the police shared no common scheme or goal.

---

[2] Bailey admits the officers acted in self-defense.

Neither, Bailey says, did he share a common goal with Murdock; indeed, "Murdock's intent was to kill Bailey."

The question is not, however, whether Murdock was Bailey's innocent or unwitting agent but whether the police officers who responded to Bailey's calls occupied that status. And, in resolving this question, we believe it is irrelevant whether Bailey and the police shared a common scheme or goal. What is relevant is whether Bailey undertook to cause Murdock harm and used the police to accomplish that purpose, a question which we believe must be answered affirmatively.

Knowing that Murdock was intoxicated, nearly blind, and in an agitated state of mind, Bailey orchestrated a scenario on the evening of May 21, 1983, whose finale was bound to include harmful consequences to Murdock, either in the form of his arrest or his injury or death. Bailey angered Murdock with accusations of homosexuality concerning Murdock himself as well as his war hero. Bailey then demanded repeatedly that Murdock arm himself with his handgun and wait on his front porch for Bailey to arrive. Bailey also threatened repeatedly that when he arrived at Murdock's home he would inflict serious injury upon Murdock and even kill him.

Having aroused Murdock's wrath and having led him to expect a violent confrontation, Bailey made two anonymous telephone calls to the police. In those calls, he falsely reported Murdock's conduct by saying the latter had threatened to "shoot up" the neighborhood and to shoot anything that moved, when Murdock had not made such threats. Bailey falsified his own ability to observe Murdock's conduct by telling the police that he, Bailey, was "right next to [Murdock] out here," when he was actually two miles away. And Bailey neglected to tell the police that Murdock was intoxicated and blind and in an agitated state of mind.

From a factual standpoint, it is clear from the sum total of Bailey's actions that his purpose in calling the police was to induce them to go to Murdock's home and unwittingly create the appearance that Bailey himself had arrived to carry out the threats he had made over the radio. And, from a legal standpoint, it is clear that, for Bailey's mischievous purpose, the police officers who went to Murdock's home and confronted him were acting as Bailey's innocent or unwitting agents.

But, Bailey argues, he cannot be held criminally liable in this case unless Murdock's death was the natural and probable result

of Bailey's conduct. Bailey maintains that either Murdock's own reckless and criminal conduct in opening fire upon the police or the officers' return fire constituted an independent, intervening cause absolving Bailey of guilt.

■ We have held, however, that "[a]n intervening act which is reasonably foreseeable cannot be relied upon as breaking the chain of causal connection between an original act of negligence and subsequent injury." *Delawder* v. *Commonwealth*, 214 Va. 55, 58, 196 S.E.2d 913, 915 (1973) (defendant lost control of vehicle while racing and struck pedestrian; striking of defendant's vehicle by other car not intervening cause). Here, under instructions not questioned on appeal, the jury determined that the fatal consequences of Bailey's reckless conduct could reasonably have been foreseen and, accordingly, that Murdock's death was not the result of an independent, intervening cause but of Bailey's misconduct. At the least, the evidence presented a jury question on these issues. *See id.*

Finally, Bailey maintains that his conviction is improper in light of our decision in *Wooden* v. *Commonwealth*, 222 Va. 758, 284 S.E.2d 811 (1981). There, the accused participated in a robbery with accomplices Anthony and Frye. The victim shot and killed Anthony, and Frye then shot and killed the victim. The accused was convicted of felony-murder for both killings. We reversed the conviction for the killing of the co-felon. We said that because malice is an essential element of felony-murder and because there was no evidence that the victim killed the co-felon with malice, there was no malice in the death of the co-felon that could be imputed to the accused under the felony-murder rule. Accordingly, we held that "a criminal participant in a felony may not be convicted of the felony-murder of a co-felon killed by the victim of the initial felony." *Id.* at 765, 284 S.E.2d at 816.

■ Reading our opinion to say that we reversed in *Wooden* because the killing of the co-felon was a justifiable homicide, Bailey argues that we should take the same action here because "Murdock's death was [also] a justifiable homicide." As the Attorney General points out, however, we did not reverse in *Wooden* because the victim's killing of the co-felon constituted a justifiable homicide but because malice, an essential element of a murder prosecution, was lacking. In this case, a manslaughter prosecution, proof of malice is not required, and, moreover, there is no lack of

proof of any of the elements essential to Bailey's conviction. Accordingly, we will affirm the conviction.

*Affirmed.*