**Salem**

## LISA GAIL GALLIMORE

v.

## COMMONWEALTH OF VIRGINIA

No. 1777-91-3

Decided October 27, 1992

COUNSEL

A. Ellen White (Joseph R. Johnson, Jr. & Associates, on brief), for appellant.

Janet F. Rosser, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**MOON, J.—** Lisa Gail Gallimore appeals her bench trial conviction for involuntary manslaughter. She argues that she cannot be held criminally responsible for the death of James Branscome because her actions were not criminal in nature and were not a foreseeable cause of Keith Southern shooting Branscome. We affirm because the evidence supports a finding that Gallimore was guilty of negligence or reckless conduct so gross and culpable as to indicate a callous disregard for human life and that her actions were the proximate cause or a concurring cause of Branscome's death.

> "Involuntary manslaughter is defined as the accidental killing of a person, contrary to the intention of the parties, during the prosecution of an unlawful, but not felonious, act, or during the improper performance of some lawful act. The 'improper' performance of the lawful act, to constitute involuntary manslaughter, must amount to an unlawful commission of such lawful act, not

merely a negligent performance. The negligence must be criminal negligence."

*Cable v. Commonwealth*, 243 Va. 236, 240, 415 S.E.2d 218, 220, (1992) (citation omitted).

"Gross negligence" is culpable or criminal when accompanied by acts of commission or omission of a wanton or wilful nature, showing a reckless or indifferent disregard of the rights of others, under circumstances reasonably calculated to produce injury, or which make it not improbable that injury will be occasioned, and the offender knows, or is charged with the knowledge of, the probable result of his acts.

*Bell v. Commonwealth*, 170 Va. 597, 611-12, 195 S.E. 675, 681 (1938).

■ Whether a defendant knows of the dangerous risk she or he causes is measured by an "objective awareness test"—whether the defendant knew or "should have known" of the risk her or his conduct created. *See Keech v. Commonwealth*, 9 Va. App. 272, 281-82, 386 S.E.2d 813, 818 (1989).

■ "[O]ne who effects a criminal act through an innocent or unwitting agent is a principal in the first degree" and may be guilty of involuntary manslaughter. *Bailey v. Commonwealth*, 229 Va. 258, 262, 329 S.E.2d 37, 40 (1985).

Thus, the issue is whether the trial judge could have found beyond a reasonable doubt that Gallimore, in reckless disregard of the rights of Branscome, created a situation that she knew or should have known "ma[d]e it not improbable that [serious] injury [would] be occasioned." *Bell*, 170 Va. at 612, 195 S.E. at 681.

On appeal, we must consider the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. *Higginbotham v. Commonwealth*, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975). "The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Hambury v. Commonwealth*, 3 Va. App. 435, 437, 350 S.E.2d 524, 524 (1986) (citations omitted).

On January 13, 1990, Gallimore attended a party at the home of a friend with Wanda Southern, Wanda's husband Keith Southern, Keith's sister Connie Southern, Dean Reichner, and Renee Miller. Gallimore later rode in a car with Wanda and Keith Southern to the Southerns' home in Newbern. On the way, they picked up Glen Lyons, Wanda's brother. Later, Reichner arrived with Miller at the Southerns' home and the group drank beer and played pool.

While the men were playing pool, Wanda drove Gallimore to Connie Southern's house. En route, they met a truck driven by Kenny Jones, in which James Branscome (the ''victim'') and Barry Gregory were passengers. Kenny and Wanda talked briefly and the group decided to drive to the top of Draper's Mountain. Once at the mountain, Wanda got into the truck with Jones. To avoid being seen on the mountain, the group agreed to go to the Skyline Motel. Gallimore, joined by Branscome, drove Wanda's Subaru. Gallimore told Wanda that she would follow behind Wanda and Jones. Wanda testified that she went with Jones willingly. Jones, Gregory and Wanda Southern waited for Gallimore and Branscome at the motel and, when they did not arrive, returned to the top of Draper's Mountain but did not find them. Gallimore and Branscome did not meet with them again.

Around 2:00 a.m. on January 14, 1990, Gallimore returned to the Southern home, where Keith Southern, Lyons, Reichner and Miller were still playing pool. Gallimore, out of breath and panting, exclaimed: ''Oh my God, you've got to do something. Some guys have got Wanda. You've got to do something.'' Gallimore told Southern, Lyons, and the others that three men in a truck met her and Wanda, threw Gallimore from the car, and took Wanda with them. Gallimore kept repeating that they should ''go get Wanda.'' Lyons asked Southern, while Gallimore stood right in front of Southern, if they should take a gun. Southern said yes because, as he testified, ''we didn't really know what we were getting into.'' Lyons got a handgun from Southern's bedroom and carried it in his hand. He walked with it in plain view past Gallimore to leave with Reichner to search for Wanda. Gallimore said nothing to stop them and did not tell them that Wanda had not been abducted. Southern and Miller remained at the house.

Lyons and Reichner drove less than a mile before they saw Wanda's Subaru driven by Branscome, who stopped them to ask for directions to Interstate 81. Lyons held Branscome at gunpoint and sent Reichner to get Keith Southern.

Meanwhile, back at the Southern house, Miller called the police. Southern took the phone and told the dispatcher that his wife had been abducted. During the phone conversation, Gallimore sat at the kitchen table only a few feet from Southern. Reichner returned to the house and, while Gallimore sat nearby, told Southern in a loud voice, "Come on buddy we got a dude driving Wanda's car up here in the fucking road." Southern, who was still on the phone with the police, told them the location where Branscome had been stopped. He told the police that his "wife may be lying somewhere in a ditch." Gallimore did nothing to stop Reichner or Southern as they rushed from the house or to inform them that Wanda Southern had not been abducted.

When they arrived at the Subaru, Lyons gave the gun to Southern, who asked Branscome the whereabouts of his wife. Branscome replied that he did not know her. Branscome would not explain how he came to be driving Wanda's car. Later, Branscome said he could take them to Wanda. Southern opened the car door and motioned for Branscome to drive. When Branscome appeared reluctant, Southern tugged his shoulder and Branscome jerked back. According to Southern, Branscome "swung up with his arm. I swung up with my arm. He swung at me with the other arm. I swung up with my left hand which had the gun in it." The gun fired and hit Branscome in the head. Southern said, "Oh my God. I shot this man."[1]

Lyons and Reichner returned to the Southerns' home, where Lyons called the police and told them that a man had been shot. Gallimore and Miller were still sitting at the kitchen table where Gallimore could hear the conversation. When the police arrived at the shooting scene, they asked for a photograph of Wanda to assist in looking for her. Reichner returned to the Southerns' home to get a picture and Gallimore, continuing the deception, took one from the living room wall and gave it to Reichner, who took it to the police.

Around 2:00 a.m., Gallimore called Connie Southern and asked if she had seen Wanda. Gallimore told Connie that Wanda was forced out of the car and that she thought Kenny Jones was involved. Gallimore insisted Connie come help look for Wanda. Connie told Gallimore that she should tell Southern that Wanda had not been kidnapped and was actually with Kenny Jones.

---

[1] Southern pled guilty to involuntary manslaughter.

Around 2:40 a.m., Jones dropped Wanda off at Connie Southern's house. Wanda called her house and talked to Gallimore, who said, "Ha, ha, Wanda, guess what. You've got to tell Keith (Wanda's husband) the same thing I told him." Gallimore also told Wanda that Branscome had taken her out to eat and that they rode around looking for them. Gallimore told Wanda that she (Gallimore) had told Keith that Wanda had been kidnapped. Wanda repeatedly told Gallimore to tell the truth, but Gallimore said she could not because she thought Keith Southern had shot Branscome and thought Branscome was dead.

At the sheriff's department, Wanda told Gallimore that for what she had done her husband could go to prison. Gallimore said, "I don't care. The bastard (Branscome) got what he deserved. He tried to rape me." Gallimore told Connie Southern that "the son-of-a-bitch deserved to die" because she said Branscome had tried to rape her. Prior to her claims at the sheriff's department, Gallimore had made no allegation that Branscome had tried to rape her.

Officer Dobbins of the Pulaski police talked to Gallimore once at the Southern home and later at the department. Gallimore's story changed from Wanda being abducted at Jennings Trailer Park to the abduction happening on Draper's Mountain. When confronted by Wanda in Dobbins' presence, Gallimore admitted that she told Wanda on the phone that they needed to get their stories straight. Dobbins told Gallimore, "You realize that this lie you told got an innocent man killed." Gallimore responded, "So—I didn't know the son-of-a-bitch."

## I. *Criminal Negligence*

Gallimore knew that a dangerous condition had been created by her deceit. By her actions of reporting to Keith Southern that his wife had been forcibly abducted, Gallimore incited Southern and his friends to search for Wanda Southern and her abductors. She knew that the men were armed and that violence could ensue when Keith Southern and his friends encountered the persons they thought to have abducted Wanda Southern. After Reichner returned to the Southern home and reported to Keith Southern in Gallimore's presence that "we got a dude driving Wanda's car," Gallimore knew or should have known that the situation she created had escalated and was fraught with imminent danger that someone might be killed or seriously injured, yet she

took no steps to defuse the danger that she knowingly and purposefully set in motion. She knew or should have known that she could avoid the danger by revealing the truth. She had a duty to act to avoid the danger but she did not. Violating that duty was proof of negligence. *See Dalldorf v. Higgerson-Buchanan, Inc.*, 402 F.2d 419, 421-22 (4th Cir. 1968). From the circumstances, the trial judge could reasonably have concluded that Gallimore acted with reckless and utter disregard for the life and personal safety of all the persons she had incited by her deceit. The circumstances created by and known to Gallimore made it not improbable that death or serious injury would occur. Also, while the callousness of Gallimore's comments after learning of Branscome's death is not, itself, evidence of disregard for human life that would support a finding of criminal negligence, it is further evidence that shows that when she set the events in motion, she did so with little or no regard for another's life. At one point Gallimore, said, "the bastard deserved to die." At another she said of his death: "I didn't know the son-of-a-bitch." These statements demonstrate that when Southern and Reichner left the house thinking that one of Wanda's abductors had been captured, Gallimore had no concern that she had knowingly placed Branscome in a perilous situation.

## II. *Foreseeability*

Gallimore argues that her deceitful story was not the proximate cause of Branscome's death because the altercation between Branscome and Southern leading to the shooting, which resulted in Branscome's death, was not foreseeable. She does not contend that but for her story, Branscome would not have been shot. She argues that the altercation between Branscome and Southern was an intervening cause which relieved her of criminal responsibility.

Reasonably foreseeable intervening acts do not break the "chain of causal connection between the original act of negligence and subsequent injury." *Delawder v. Commonwealth*, 214 Va. 55, 58, 196 S.E.2d 913, 915 (1973). For Gallimore's negligence to have been a remote cause of Branscome's death, Southern's action must have been an independent, intervening act alone causing the death. *Id.* at 57, 196 S.E.2d at 915. Here, the issue was for the fact finder to determine whether Southern's actions were an intervening, remote, or concurring cause of Branscome's death. *See id.* at 57-58, 196 S.E.2d at 915.

[T]he proximate cause of an injury may in general be stated to be that act or omission which immediately causes or fails to prevent

the injury; an act or omission occurring or concurring with another, where, had it not happened, the injury would not have been inflicted, notwithstanding the latter. . . .

It is sufficient if it be established that the defendant's act produced or set in motion other agencies, which in turn produced or contributed to the final result.

*Schools v. Walker*, 187 Va. 619, 629, 47 S.E.2d 418, 423 (1948).

We hold that sufficient evidence supports the trial judge's finding that Gallimore's conduct was a concurring, proximate cause of Branscome's death.

From ordinary human experience, an adult should realize that telling a woman's husband and brother that she has been forcibly abducted from her car would create a state of high anxiety in the minds of both men and would lead them to do everything reasonably possible to effect a rescue. An individual should know if the husband or brother encountered one of the alleged abductors operating the vehicle from which the wife or sister had been seized, they would confront the abductor to determine the fate and whereabouts of the woman. Where the rescuers are known to be armed, an individual would, or should, reasonably expect that the rescuers would display the firearm to protect themselves from an act of violence by a person whom they believe has committed a felony against a loved one and to display the weapon to force his cooperation in locating and releasing her. Adults know or should know that brandishing a firearm is inherently dangerous and illegal. *See* Code § 18.2-282.

Gallimore argues, however, that it cannot be inferred that, when she first told the story of the kidnapping before Lyons and Miller left with the gun, it was foreseeable that they would encounter the alleged abductors. She argues that the encounter was a remote circumstance and that it was unforeseeable that Branscome would become lost and would stop Lyons to ask for directions. However, Gallimore's wrongdoing, which resulted in Branscome's death, did not end after her first story of Wanda's kidnapping. We consider the totality of her actions.

We believe the trial judge properly considered Gallimore's conduct as of the time Reichner returned and told Keith Southern that one of the kidnappers was being held up the road with Wanda's car. When Gallimore heard Reichner return and loudly state that they had caught a man driving Wanda's car, she knew a dangerous confrontation was

taking place. Because Gallimore told Wanda Southern that she had been riding around with Branscome in Wanda's car, Gallimore knew or should have known that Branscome might be the one in Wanda's car that Lyons and Reichner had discovered. Still, Gallimore only stood by as Southern left to go up the road to the scene, knowing that Southern's gun had been carried there by Lyons. The fact that the police may have been alerted does not negate Gallimore's culpability and the fact that she knew that a dangerous situation was escalating. In fact, the fact that the police had been called lent credence to Gallimore's story and to her suggestion that a dangerous fate had befallen Wanda.

Gallimore's false accusation that "some men" had abducted Southern's wife incited Southern and the others to search for Wanda and to "do something." The trial judge found that it was reasonably foreseeable that Southern or Lyons, fearing for Wanda's safety, would use force to get information from Branscome. Credible evidence supports that finding. When Southern left with Reichner, Gallimore knew that Southern was in a highly emotional and stressful state, fearing the worst for his wife. In Gallimore's presence, Southern had just told the police by phone that his wife "might be lying in a ditch." Gallimore knew that Lyons had Southern's gun. At that point, it was certain that Keith Southern, along with Lyons, Wanda's brother, armed with Southern's gun, would have a confrontation with Branscome. It was foreseeable that the gun would be brandished and that lives or personal safety would be endangered. Gallimore knew, or should have known, of the dangerous risk of someone being shot or injured when Southern left the house to confront Branscome.

Gallimore created a substantial likelihood that a gun would be displayed so as to induce fear and thus compliance by Branscome. The risk of a gun accidentally discharging is too well known to need discussion. It is not necessary that Gallimore foresaw the specific manner in which injury and death occurred. It is sufficient that she reasonably could have foreseen that risk of death or serious harm might result from her actions. *See Blondel v. Hays*, 241 Va. 467, 475, 403 S.E.2d 340, 345 (1991).

Accordingly, we affirm.

*Affirmed.*

Coleman, J., and Elder, J., concurred.