## Alexandria

## WILLIAM T. CROWDER

v.

## COMMONWEALTH OF VIRGINIA

No. 2030-91-4

Decided May 18, 1993

COUNSEL

Susan L. Korfanty, Deputy Public Defender, for appellant.

Marla Lynn Graff, Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**BRAY, J.**—William T. Crowder (defendant) was convicted of destruction of private property and sentenced to twelve months in jail, all of which was suspended. He contends on appeal that the evidence was insufficient to support his conviction. We disagree and affirm the decision of the trial court.

■ Under familiar principles of appellate review, we examine the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. *Martin v. Commonwealth*, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). The judgment of a trial court, sitting without a jury, is entitled to the same weight as a jury verdict and will be disturbed only if plainly wrong or without evidence to support it. *Id.* The credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely within the province of the factfinder. *Long v. Commonwealth*, 8 Va. App. 194, 199, 379 S.E.2d 473, 476 (1989).

The record discloses that on March 14, 1991, at approximately 10:30 p.m., defendant arrived at the home of Charles Littlepage (Littlepage), where defendant's "girlfriend," Carol Palmateer (Palmateer), rented a room. Defendant and Palmateer had been "having an argument" and he "went over there to get some of [his] belongings." Carlos Hackley (Hackley), another tenant, answered defendant's knock at the door and defendant, who "had been drinking," "pushed his way in and went upstairs" to Palmateer's room.

Shortly thereafter, Hackley heard "a lot of confusion" in the room, "things being thrown around," and recalled that, while he was talking with Littlepage by phone, a "T.V. came through the window and hit" Littlepage's boat, then located on a trailer outside the house.[1] Hackley

---

[1] The television was described by defendant as a 19-inch color portable, weighing "25 pounds, 30 pounds maybe." Littlepage described his boat as a "Hobie Cat 16 foot," a "day sailer."

testified that defendant then "came downstairs," "[s]torming," and asked, "[D]o you want a piece of this also?" Hackley declined and defendant "left."

When Hackley reported these events to Littlepage, he came to the home, inspected his property and discovered the window of Palmateer's room "completely pushed out," "several holes" in the door and walls of the room, "a color TV laying on the ground next to [his] sail boat" and a "puncture wound"in the boat's porthole. Littlepage immediately confronted defendant, then "about a block away," and asked that he return to the house so the police "could hear his side of the story." In response, defendant "ripped his shirt off and said come on."

Alexandria Police Investigator Charlene Bartlett testified that defendant later stated to her that "he threw the TV through the window" and "was sorry for what had happened."

Code § 18.2-137 provides that "[i]f any person unlawfully destroys, defaces [or] damages . . . any property, real or personal, not his own . . . he shall be guilty of . . . a Class 1 misdemeanor if the value of or damage to the property . . . is less than $1,000."[2] Defendant argues that the Commonwealth failed to prove either the criminal intent or "degree of negligence" necessary to support his conviction for violating this statute.

■ Criminal intent may " 'flow . . . from intentionally doing an act which has the inherent potential of doing bodily harm, and doing so in a criminally negligent manner.' " *David v. Commonwealth*, 2 Va. App. 1, 4, 340 S.E.2d 576, 578 (1986) (quoting *State v. Anania*, 340 A.2d 207 (Me. 1975)). Thus, as defendant acknowledged on brief, the Commonwealth was not required to prove a specific intent to damage Littlepage's boat. Criminal responsibility under the statute attaches when property is damaged or destroyed during the commission of an unlawful act, which includes the performance of a lawful act in a criminally negligent manner. *See Gooden v. Commonwealth*, 226 Va. 565, 571, 311 S.E.2d 780, 784 (1984); *King v. Commonwealth*, 217 Va. 601, 606-07, 231 S.E.2d 312, 316 (1977); *Gallimore v. Commonwealth*, 15 Va. App. 288, 290, 422 S.E.2d 613, 614 (1992); *Tubman v. Commonwealth*, 3 Va. App. 267, 274, 348 S.E.2d 871, 875 (1986).

---

[2] The evidence disclosed total damages of less than $1,000.

" 'Gross negligence' is culpable or criminal when accompanied by acts . . . of a wanton or wilful nature, showing a reckless or indifferent disregard of the rights of others, under circumstances reasonably calculated to produce injury, or which make it not improbable that injury will be occasioned, and the offender knows, or is charged with the knowledge of, the probable result of his acts."

*Gallimore*, 15 Va. App. at 290, 422 S.E.2d at 614 (quoting *Bell v. Commonwealth*, 170 Va. 597, 611-12, 195 S.E. 675, 681 (1938)); *Keech v. Commonwealth*, 9 Va. App. 272, 279, 386 S.E.2d 813, 817 (1989); *Tubman*, 3 Va. App. at 271, 348 S.E.2d at 873.

Here, defendant, apparently enraged, "threw" the television, a large and weighty object, from an upper story window, from which it fell to the unprotected ground below. Although this conduct may not have been "inherently unlawful," it was clearly "done without requisite caution, in an unlawful manner." *Gooden*, 226 Va. at 571, 311 S.E.2d at 784. From such circumstances, the trial court could reasonably have concluded that defendant acted intemperately, "with reckless and utter disregard" for "the rights of others" and "reckless indifference to the consequences of his actions." *Gallimore*, 15 Va. App. at 614-16, 422 S.E.2d at 614-15; *Tubman*, 3 Va. App. at 275, 348 S.E.2d at 875; *Strickland v. Commonwealth*, 16 Va. App. 180, 182, 428 S.E.2d 507, 508 (1993). Such conduct constituted unlawful criminal negligence, resulting in property damage in violation of the statute.

Therefore, the trial court's judgment is neither plainly wrong nor without evidence to support it and, accordingly, is affirmed.

*Affirmed.*

Fitzpatrick, J., concurred.

Benton, J., dissenting.

William T. Crowder was convicted of the misdemeanor offense of unlawfully damaging a catamaran boat. The evidence failed to prove that Crowder intended to damage the boat or acted with criminal negligence. "[T]he negligence required to be proven in a criminal proceeding must be more than the lack of ordinary care and caution [, and it] must be something more than mere inadvertence or misadventure." *Zirkle v. Commonwealth*, 189 Va. 862, 868, 55 S.E.2d 24, 28 (1949).

In defining criminal negligence, our Supreme Court . . . stated: "[criminal negligence] must be more than mere inadvertence or misadventure. It is a recklessness or indifference incompatible with a proper regard for human life." Criminal negligence has also been defined as conduct "so gross, wanton, and culpable as to show a reckless disregard of human life," and conduct "so flagrant, culpable, and wanton as to show utter disregard of the safety of others under circumstances likely to cause injury," and conduct "so gross and culpable as to indicate a callous disregard of human life."

*Keech v. Commonwealth*, 9 Va. App. 272, 278, 386 S.E.2d 813, 816 (1989) (citations omitted). The evidence in this case is not consistent with guilt, and it is clearly consistent with the hypothesis of inadvertence.

Because the majority opinion does not discuss the events that occurred in the room, it leaves the impression that Crowder went into Palmateer's room, picked up a television, and intentionally threw it out the window. The events did not occur in such a manner. Because Crowder's intent was the critical issue, the events that caused the television to go out the window cannot be ignored. The evidence proved that Crowder went to the room of Carol Palmateer, his friend, to get his television. When he was admitted to the house where Palmateer rented a room, he was in a state of agitation. One of the tenants in the house testified that an argument ensued when Crowder entered Palmateer's room and that he heard noises consistent with a struggle. The tenant then saw a television fall from the second floor, where Palmateer's room was located, and hit a boat that was sitting by the house. The tenant said that when Crowder left the house, Crowder was "storming."

Crowder testified that earlier that day he and Palmateer had a disagreement. He went to Palmateer's room to get his belongings, including his television. He testified that he went into her room and walked over to the television, which sat on a stand six inches from the window. When he began to lift the television, Palmateer tried to prevent him from removing it. They scuffled with the standard size, nineteen inch portable television. Crowder testified that during the pushing and shoving, he "jerked on [the television] too hard while [he] was pulling it from her and it flipped out of [his] hands and right out the window it

went.'' He testified that he was trying to obtain control of his television and had no intention of throwing his own television from the window. After the incident, Crowder began paying the owner of the boat for the damage he caused.

Palmateer also testified that Crowder came to her room in anger to get his television. She said that when she attempted to prevent Crowder from removing the television, they began to tug at the television. Palmateer said it slipped from Crowder's hands during the struggle. She also testified that Crowder did not deliberately throw the television out the window, but, instead, had intended to take it with him.

When Crowder was arrested, he told the officer that it was his television that had gone through the window and that he was sorry for what had happened. When the officer was asked to recount Crowder's statement to her, she testified as follows:

Q: What did he say about this incident that occurred at 147 Montigue Avenue, involving Mr. Littlepage's boat?

A: He indicated that it had occurred. That it was his TV that had gone through the window. He was sorry for what had happened.

He had paid for — and he agreed to pay for the damages. He told me he had already issued a check for fifty dollars or something like that.

Nothing in that exchange conflicts with any of the evidence proved at trial. Crowder does not dispute that he said those things to the investigator. Moreover, Crowder does not contend that his forceful jerk did not cause the television to be propelled out the window. Crowder testified that he told the investigator he "was willing to take responsibility for that television going out that window because it was [his] fault."

The Commonwealth's theory of prosecution and argument on appeal is that Crowder intentionally threw the television out the window. In support of that theory, the Commonwealth relies upon one question posed by the Commonwealth to the investigator:

Q: Did [Crowder] tell you who threw the TV out the window?

A: He said he threw the TV through the window.

Crowder denied telling the investigator that he "threw" the television out the window. Furthermore, Crowder argues that the investigator's response does not prove beyond a reasonable doubt intentional conduct or criminal negligence.

Significantly, in her narrative testimony concerning Crowder's statement, the investigator did not state that Crowder said he "threw" the television out the window. She recounted that Crowder said "[t]hat it was his TV that had gone through the window." She used the word "threw" only when the prosecutor asked the suggestive, leading question. Moreover, and more significantly, the word "threw" could reasonably be interpreted to mean that something was propelled in the air. The word does not, standing alone, prove intent and does not negate inadvertence.

Indeed, the evidence proved that Crowder was motivated by anger when he went to Palmateer's room to retrieve his television. All of the evidence, particularly the testimony of the tenant, who was the Commonwealth's witness, proved that Crowder and Palmateer argued and struggled in the room. Even if the majority ignores Crowder's and Palmateer's testimony that they struggled over the television, no evidence proved that Crowder intentionally or with criminal negligence caused the television to be propelled out the window and onto the boat.

> In order to constitute criminal negligence there must be a higher degree of negligence than is required in a civil proceeding. There must be more than a lack of ordinary care. The negligence must be of such reckless, wanton or flagrant nature as to indicate a callous disregard for human life and of the probable consequences of the act.

*Lewis v. Commonwealth,* 211 Va. 684, 687, 179 S.E.2d 506, 509 (1971) (citation omitted). The evidence did not prove that Crowder's actions manifested " 'arrogant recklessness of justice, of the rights or feelings of others . . .; merciless; inhumane,' " *Tubman v. Commonwealth,* 3 Va. App. 267, 274, 348 S.E.2d 871, 875 (1986) (citation omitted), or that Crowder was "aware of the risk and disregard[ed] it." *Id.* at 275, 348 S.E.2d at 875. Moreover, no

evidence remotely tended to prove that Crowder intentionally threw his television out the window.

Because the evidence did not prove criminal negligence, I would reverse the conviction and dismiss the indictment.