## LISA GAIL GALLIMORE

### v.

## COMMONWEALTH OF VIRGINIA

Record No. 921786

November 5, 1993

Present: All the Justices

*A. Ellen White* for appellant.
*Janet F. Rosser, Assistant Attorney General (Stephen D. Rosenthal, Attorney General* on brief), for appellee.

JUSTICE LACY delivered the opinion of the Court.

James Glen Branscome was killed during a scuffle by a bullet fired from a gun held by Keith Southern. Southern pled guilty to

involuntary manslaughter. Lisa Gail Gallimore was tried and convicted of involuntary manslaughter in the shooting death of Branscome and was sentenced to 10 years' imprisonment with five years suspended by the Circuit Court of Pulaski County. The Court of Appeals affirmed her conviction. *Gallimore v. Commonwealth*, 15 Va. App. 288, 422 S.E.2d 613 (1992).

On appeal Gallimore argues that the evidence is insufficient to support her conviction for involuntary manslaughter and that her conviction should be reversed because her negligence was not a proximate or concurring cause of Branscome's death.

## A.

Under well recognized principles, we state the facts in the light most favorable to the prevailing party, in this case the Commonwealth. On January 13, 1990, Gallimore, Wanda Southern and her husband Keith, Keith's sister Connie Southern, William Dean Reichner, Kenny Gray, and Renee Miller attended a party in Mount Olivet. They left the party around 9:30 p.m. and went to Wanda and Keith Southern's home. Connie Southern returned to her home with Kenny Gray. About 11:45 p.m. Gallimore and Wanda Southern left in Wanda's Subaru to get Connie Southern and bring her back to Wanda's home with them.

Along the way they passed a truck driven by Kenny Jones. Recognizing Jones, Wanda drove the Subaru into a parking lot and the truck pulled in beside her. Jones wanted to speak with Wanda. Wanda agreed and the two vehicles were driven to the top of Draper's Mountain. When they arrived at the top of the mountain, the passengers in the truck, Barry Gregory and Branscome, got out of the truck. Branscome began talking with Gallimore and Wanda got into the truck with Jones. Shortly thereafter, Jones suggested that he and Wanda drive to the Skyline Motel to avoid being seen on the mountain. Wanda agreed, and shouted to Gallimore to follow them. Gallimore, with Branscome in the passenger seat, agreed to follow the truck in Wanda's car. Gregory returned to the truck with Wanda and Jones. Gallimore and Branscome, however, never rejoined the group at the motel.

About 2:00 a.m. Branscome dropped Gallimore off approximately one mile from Wanda and Keith Southern's residence. She ran to the house and entered through the basement where Keith Southern, Glen Lyons, Dean Reichner, and Renee Miller were playing pool.

Gallimore was hysterical, out of breath, panting, and flushed. She exclaimed, "Oh, my God, you've got to do something. Some guys have got Wanda. You've got to do something." She kept repeating that they had to help Wanda. Southern grabbed her by the shoulders and shook her to get more details. Gallimore said that three men in a truck had met her and Wanda, had pushed Gallimore out of the car, and had taken Wanda. The incident happened near the Jennings Trailer Court, she said. She repeated her admonition that they help Wanda and suggested that they call the police.

The group proceeded upstairs to the kitchen and Renee Miller called the police. Wanda's brother Lyons and Reichner prepared to leave to look for Wanda. Lyons asked Keith Southern, who was standing only three or four feet from Gallimore, if he thought they should take a gun. Southern replied that they should, because "[w]e didn't really know what we were getting into." Lyons retrieved Keith Southern's .22 caliber pistol from Southern's bedroom and left with the gun in his hand, passing within a few feet of Gallimore.

Lyons and Reichner had driven only about a third of a mile when they saw a car approaching. The driver, Branscome, whom they did not know, stopped the car and asked for directions. Recognizing the car as Wanda's Subaru, Lyons asked Branscome where Wanda was and ordered him out of the car. While Lyons held Branscome at gunpoint, Reichner returned to the house to get Keith Southern.

Meanwhile, Keith Southern had taken the telephone from Miller and was talking to the police. He told the dispatcher that his wife had been abducted and tried to explain where he thought it had happened. While Southern was talking on the telephone, Reichner returned and told Southern, "We've got some guy. We've got this dude up the road driving Wanda's car. Let's go." Reichner was excited and talking in a loud voice. Southern ended his conversation with the police, stating that they had better arrive soon because he wanted "to get the goddamn people responsible!" Southern then left his house with Reichner to rejoin Lyons and Branscome.

During Southern's conversation with the police, Gallimore was sitting only a few feet away from the telephone. At no time did she tell anyone that her statements about the kidnapping were not true, nor did she attempt to stop Southern, Lyons, or Reichner from leaving the house.

When Southern and Reichner arrived at the place where Lyons was holding Branscome at gun point, Southern took the gun from Lyons. He placed a bullet in the pistol's chamber and put the safety

on. When Southern asked Branscome where Wanda was, Branscome denied knowing her. While Branscome would not tell Southern how he got Wanda's car, he finally agreed to take them to Wanda. Southern opened the driver's door to allow Branscome to drive, but Branscome appeared reluctant. Southern tugged at Branscome's shoulder. Branscome jerked back and swung his arm at Southern, who, in turn, swung at Branscome with the hand in which he was holding the gun. The gun discharged and the bullet hit Branscome in the head. Southern declared, "Oh, my God. I shot this man."

Seeing that Branscome was dead, Lyons and Reichner returned to the Southern home to notify the police. Lyons told Gallimore and Miller that Southern shot a man. The police arrived at the scene of the shooting and were advised of the abduction as described by Gallimore and the circumstances of Branscome's death. At the request of the police, Gallimore gave Reichner a picture of Wanda to assist in the abduction investigation.

About 2:30 a.m. Jones dropped Wanda off at Connie Southern's house. Wanda called her own house and talked to Gallimore, who told Wanda that she had to tell Keith the same story that Gallimore had told him. When Wanda asked Gallimore why they could not tell Keith the truth, Gallimore replied that Keith had shot Branscome and that she thought he was dead.

Later, at the sheriff's department, Gallimore admitted that she had fabricated the story of Wanda's kidnapping. When Wanda told Gallimore that Southern could go to prison, Gallimore said, "I don't care. The bastard [Branscome] got what he deserved. He tried to rape me." Gallimore did not report any attempted rape to the police, but when confronted with the fact that the lie she told "got an innocent man killed," Gallimore replied, "So - - - I didn't know the son-of-a-bitch."

## B.

To convict Gallimore of involuntary manslaughter, the Commonwealth was required to prove that Gallimore committed "acts of commission or omission of a wanton or wilful nature, showing a reckless or indifferent disregard of the rights of others, under circumstances reasonably calculated to produce injury, or which make it not improbable that injury will be occasioned, and

the offender knows, or is charged with the knowledge of, the probable result of his acts.'' *Bell v. Commonwealth*, 170 Va. 597, 611-12, 195 S.E. 675, 681 (1938). The Commonwealth must also prove that Gallimore's criminally negligent acts were a proximate cause of the victim's death. *Cable v. Commonwealth*, 243 Va. 236, 240, 415 S.E.2d 218, 220 (1992). The fact finder concluded that the Commonwealth satisfied its burden of proof in this case. On review we must affirm that judgment unless it is plainly wrong or without evidence to support it. Code § 8.01-680.*

▇ Gallimore knew that the actions of Wanda's husband, friend, and brother were based on the fabricated abduction story. She knew or should have known the danger and probable physical harm inherent in the situation and that this danger was heightened when Lyons took Southern's gun. She also knew that she could avoid this danger by telling the truth and retracting the abduction story. As stated by the Court of Appeals:

> After Reichner returned to the Southern home and reported to Keith Southern in Gallimore's presence that "we got a dude driving Wanda's car," Gallimore knew or should have known that the situation she created had escalated and was fraught with imminent danger that someone might be killed or seriously injured, yet she took no steps to defuse the danger that she knowingly and purposefully set in motion.

---

* Gallimore also argues that the evidence is insufficient to convict her as a principal in the first degree under the doctrine of innocent agent. That doctrine allows a defendant not present at the commission of the crime to be convicted as a principal in the first degree, if the defendant engaged in actions which caused the actual perpetrator to commit the crime as an innocent agent of the defendant. The innocent agent is "innocent" because he or she is a child, or is mentally incompetent, or otherwise does not have the requisite criminal state of mind. 2 Wayne R. LaFave & Austin W. Scott, Jr., *Substantive Criminal Law*, § 6.6(a) (1986); *see Bailey v. Commonwealth*, 229 Va. 258, 329 S.E.2d 37 (1985). The theory is not properly applied when, as here, the agent himself is criminally culpable for the same offense as that charged against the defendant. Although the Commonwealth argued this theory as one of the theories under which Gallimore could be convicted of involuntary manslaughter as a principal in the first degree, the indictment did not charge her with a specific party status and there is no requirement that it do so. *Hyman v. Commonwealth*, 206 Va. 891, 892-93, 147 S.E.2d 156, 157 (1966). Neither the trial court nor the Court of Appeals discussed or held that Southern acted as Gallimore's innocent agent when he fired the shot that killed Branscome. As Gallimore's culpability rests on findings of criminal negligence and proximate cause, rather than criminal intent, identification of common law party status was not required for conviction of involuntary manslaughter.

*Gallimore*, 15 Va. App. at 293-94, 422 S.E.2d at 616. This conduct supports a finding that Gallimore's acts constituted criminal negligence.

Gallimore argues, however, that even if her actions "initiated a chain of events which ultimately ended in Branscome's death," the death was caused by the scuffle between Branscome and Southern in which the gun accidentally discharged. This struggle, Gallimore contends, was the proximate cause of Branscome's death. The scuffle was an independent, intervening act which alone caused Branscome's death, she concludes.

In addressing Gallimore's argument, we consider the principles applicable to a finding of proximate cause. These principles are constant whether considered in a civil or criminal context. There can be more than one proximate cause and liability attaches to each person whose negligent act results in the victim's injury or death. *Maroulis v. Elliott*, 207 Va. 503, 510, 151 S.E.2d 339, 344 (1966). To be an intervening cause as Gallimore argues it was, the scuffle must have been an event which she could not have foreseen. "An intervening act which is reasonably foreseeable cannot be relied upon as breaking the chain of causal connection between an original act of negligence and subsequent injury." *Delawder v. Commonwealth*, 214 Va. 55, 58, 196 S.E.2d 913, 915 (1973). Furthermore, an intervening event, even if a cause of the harm, does not operate to exempt a defendant from liability if the intervening event was put into operation by the defendant's negligent acts. *Baxley v. Fischer*, 204 Va. 792, 798, 134 S.E.2d 291, 295 (1964).

Our review of the record shows that, but for Gallimore's false story of an abduction and her failure to retract the story at any point before the death of Branscome, Southern, Reichner, and Lyons would not have left the Southern house, taken Southern's gun, or gotten involved in a scuffle with Branscome. Gallimore's negligent acts and omissions exposed Branscome to the subsequent negligent act which ultimately resulted in his death.

When Gallimore created the story of Wanda's kidnapping, repeated it to Wanda's husband and brother, urged them to "get the guys" who did it, and to help Wanda, an altercation, scuffle, or violence of some sort was a readily foreseeable consequence of her falsehoods and exhortations. As stated by the Court of Appeals:

From ordinary human experience, an adult should realize that telling a woman's husband and brother that she has been

forcibly abducted from her car would create a state of high anxiety in the minds of both men and would lead them to do everything reasonably possible to effect a rescue. . . .

Gallimore, 15 Va. App. at 295, 422 S.E.2d at 617.

■ Gallimore's misdeeds did not end with her initial recitation of Wanda's alleged kidnapping. Her conduct at the time Reichner returned and informed Keith Southern that one of the "kidnappers" was being held up the road is also relevant. At this point, Gallimore knew that the person being held was not a kidnapper, knew that a dangerous confrontation was involved, knew that the person holding the "kidnapper" had Southern's gun, was aware of the emotional states of Keith Southern, Lyons, and Reichner, and yet did nothing to deter these men or diffuse the situation. Not only was it foreseeable that a scuffle could ensue, but it was equally foreseeable that the gun could discharge, either intentionally or unintentionally, in the course of the scuffle.

■ Based on this evidence, we cannot say that the Court of Appeals erred in upholding the trial court's factual finding that "Gallimore's conduct was a concurring, proximate cause of Branscome's death" and that Gallimore knew or should have known that the circumstances presented a "dangerous risk of someone being shot or injured when [Keith] Southern left the house to confront Branscome." Gallimore, 15 Va. App. at 295-96, 422 S.E.2d at 617-18. Accordingly, we will affirm the judgment of the Court of Appeals.

*Affirmed.*

JUSTICE WHITING, with whom JUSTICE HASSELL joins, concurring.

I join in all of the plurality opinion except its attempt to abolish the common-law and statutory classification of parties to a felony in cases of involuntary manslaughter. If such abolition is advisable, it should be done by the General Assembly, not by judicial fiat.

The General Assembly and this Court have already spoken on the subject. Code § 18.2-18 provides, in pertinent part, that "[i]n the case of *every felony*, every principal in the second degree and every accessory before the fact may be indicted, tried, convicted and punished in all respects as if a principal in the first degree." (Emphasis

added.) And we affirmed a felony conviction of a principal in the first degree for involuntary manslaughter by applying the innocent or unwitting agent rule in *Bailey v. Commonwealth*, 229 Va. 258, 329 S.E.2d 37 (1985).

In *Bailey*, the defendant, who was angry with the victim, made false statements to the victim and to the police with the intent of luring the police to the victim's home. Bailey knew that when the police arrived, the victim would be on his front porch, armed with a handgun and prepared for a "shoot out" with Bailey, whom the victim expected to arrive momentarily. Bailey also knew that the then-intoxicated victim was almost completely blind, that he was agitated by their recent vituperative conversations, and that he would probably fire at the police officers, mistaking one of them for Bailey. The victim did shoot at the police officers and was killed when the officers returned fire in self-defense. Even though Bailey was absent from the crime scene, we affirmed his conviction for involuntary manslaughter. We concluded that Bailey was criminally liable as a principal in the first degree, acting through the unwitting policeman who shot the victim. *Id.* at 262-65, 329 S.E.2d at 40-41.

I see no significant difference between this case and *Bailey*. In each case, the evidence indicated that the defendant had a motive for making false statements resulting in harm to the victim.

Bailey's motive grew out of "an extended and vituperative conversation" with the victim in which the victim and Bailey "cursed and threatened each other repeatedly." *Bailey*, 229 Va. at 260, 329 S.E.2d at 38. In the present case, the jury could have found that Gallimore's motive was Branscome's alleged attempt to rape her.

In each case, the defendant used a third party to accomplish his or her purpose. Bailey did so by taunting the victim and setting up his encounter with the police. The jury could have found that Gallimore accomplished her purpose through false statements calculated to inflame Wanda's husband, Keith Southern (Southern). Though Gallimore was aware that Southern left to "get the goddamn people responsible [for his wife's alleged abduction]" in a highly agitated state, and that there would be a pistol at the scene, she still failed to retract her lies.

In each case, the evidence was sufficient to justify a conviction as principal in the first degree for involuntary manslaughter. In *Bailey*, the evidence was sufficient to show that Bailey "undertook to cause Murdock harm and used the police to accomplish that purpose." *Id.*

at 258, 329 S.E.2d at 40. And in this case the evidence was sufficient to show that Gallimore, as principal in the first degree, undertook to cause Branscome harm and used Southern for that purpose.

Gallimore, however, contends that *Bailey* is inapposite. She notes that the policeman was Bailey's innocent agent, but that Southern could not have been her innocent agent because he pled guilty to involuntary manslaughter. I do not agree.

We said in *Bailey* that "one who effects a criminal act through an innocent or unwitting agent is a principal in the first degree." *Id.* at 262, 329 S.E.2d at 40 (citing *Collins v. Commonwealth*, 226 Va. 223, 233, 307 S.E.2d 884, 890 (1983)). In *Collins*, an undercover policewoman collected prostitution fees for the defendant. In convicting the defendant of pandering, we held that the officer had acted as the defendant's innocent agent. And we pointed out that the same result would have obtained if one of the prostitutes actually had committed the act of prostitution, collected the defendant's fee, and then reported the matter to the police.* *Collins*, 226 Va. at 233, 307 S.E.2d at 891.

When Southern left Gallimore's presence, he did not know that Gallimore had lied about Wanda's kidnapping. Although Southern later handled the pistol in such a reckless manner as to subject himself to an involuntary manslaughter conviction, he remained Gallimore's innocent or unwitting agent in doing so. As the majority points out, given Southern's state of mind, Gallimore should have foreseen that he might injure the person detained. And, as the Court pointed out in another involuntary manslaughter case, even if the victim's immediate cause of the death was a separate criminally negligent act, this would not relieve the defendant of criminal responsibility if the intervening act was reasonably foreseeable. *See Delawder v. Commonwealth*, 214 Va. 55, 58, 196 S.E.2d 913, 915 (1973) (driver of vehicle in high-speed race who hit bystander convicted of involuntary manslaughter even though defendant lost control of his vehicle when other racing vehicle hit defendant's vehicle).

We held in *Bailey*, relying on *Delawder*, that Bailey could reasonably have foreseen the fatal consequences of his reckless conduct—the policeman's killing of the victim in self-defense. *Bailey*, 229 Va. at 264, 329 S.E.2d at 41. Here, Gallimore could reasonably

---

* Although the prostitute would not have been guilty of pandering, *Clinton v. Commonwealth*, 204 Va. 275, 283, 130 S.E.2d 437, 443 (1963), *rev'd on other grounds*, 377 U.S. 158 (1964), she could have been guilty of the related crime of prostitution.

have foreseen that her reckless conduct would cause Southern to injure or kill the victim in a criminally negligent manner, given his agitated state of mind and the availability of his pistol at the scene. In my opinion, the fact that the officer's act was not criminal and that Southern's act was criminal is a distinction without a legal difference under the facts in this case.

The plurality and the dissent ignore *Bailey* by asserting that the innocent or unwitting agent theory was not applied in the decision of the trial court or the Court of Appeals. I disagree.

At the close of the trial, the trial court commented:

> That [Gallimore] did, indeed, initiate the events that lead to the death. Uh, I do not think there is any intervening cause, uh, *and I do not think that she had to be the one who did the actual act.*

(Emphasis added.) The court then asked counsel to submit memoranda citing applicable legal authority. Although both the Commonwealth and defense counsel addressed two theories of liability (i.e. the innocent agent theory and a more general theory that Gallimore's "gross and culpable" conduct was a "proximate cause or concurring cause" of the victim's death), the court did not specify the theory on which it based its conviction of Gallimore for involuntary manslaughter.

The Court of Appeals used the innocent or unwitting agent theory as the foundation of its opinion by the use of the following language:

> Whether a defendant knows of the dangerous risk she or he causes is measured by an "objective awareness test" — whether the defendant knew or "should have known" of the risk her or his conduct created. *See Keech v. Commonwealth*, 9 Va. App. 272, 281-82, 386 S.E.2d 813, 818 (1989).

> "[O]ne who effects a criminal act through an innocent or unwitting agent is a principal in the first degree" and may be guilty of involuntary manslaughter. *Bailey v. Commonwealth*, 229 Va. 258, 262, 329 S.E.2d 37, 40 (1985).

> Thus, the issue is whether the trial judge could have found beyond a reasonable doubt that Gallimore, in reckless disregard of the rights of Branscome, created a situation that she knew or

should have known "ma[d]e it not improbable that [serious] injury [would] be occasioned." *Bell*, 170 Va. at 612, 195 S.E. at 681.

*Gallimore v. Commonwealth*, 15 Va. App. 288, 290, 422 S.E.2d 613, 614 (1992).

Further, the dissent overlooks our well-established rule that "where a trial court has decided a case correctly but has assigned the wrong reason, we will assign the correct reason and affirm." *State Farm Mutual Auto. Ins. v. Seay*, 236 Va. 275, 280 n.3, 373 S.E.2d 910, 913 n.3 (1988). *See also Metro Mach. Corp. v. Mizenko*, 244 Va. 78, 85, 419 S.E.2d 632, 636 (1992); *Robbins v. Grimes*, 211 Va. 97, 100, 175 S.E.2d 246, 248 (1970).

Thus, I conclude that the evidence supports the finding of the trial court and the conclusion of the Court of Appeals that Gallimore was guilty of involuntary manslaughter as a principal in the first degree. Therefore, I would affirm the decision of the Court of Appeals on this basis.

JUSTICE COMPTON, with whom CHIEF JUSTICE CARRICO and JUSTICE STEPHENSON join, dissenting.

Tried by the court, sitting without a jury, the defendant was convicted of involuntary manslaughter, although a third person actually killed the victim and pled guilty to involuntary manslaughter for the homicide.

At the trial level, the Commonwealth proceeded on two theories. First, the prosecutor, in opening statement, said that although the defendant did not "actually kill" the victim, "it is our position that she is guilty nevertheless . . . as a principal in the first degree under an involuntary manslaughter theory." Second, the prosecutor stated, "you have the second theory of liability" that the defendant was guilty of "gross and wanton [conduct] that . . . shows a complete disregard for human life" likely to lead to harm or death.

The trial judge did not find the defendant guilty under the first theory. Instead, the court convicted the defendant under the second theory only. The Court of Appeals likewise did not rely upon the first theory, the so-called "innocent agent" concept in which "one who effects a criminal act through an innocent or unwitting agent is a principal in the first degree." *Bailey v. Commonwealth*, 229 Va. 258, 262, 329 S.E.2d 37, 40 (1985). Rather, the Court of Appeals

ruled solely that the evidence was sufficient to support a finding that the defendant was guilty of criminal negligence that "was a concurring, proximate cause" of the victim's death. *Gallimore* v. *Commonwealth*, 15 Va. App. 288, 295, 422 S.E.2d 613, 617 (1992). Thus, the latter issue is the only question properly before this Court for review.

In my opinion, the evidence was insufficient, as a matter of law, to support a finding beyond a reasonable doubt that the defendant's criminal negligence was a proximate cause of the victim's death; the killing by the third person was not a reasonably foreseeable result of defendant's criminal negligence.

The evidence is uncontradicted that the victim was shot accidentally during a "scuffle" between the assailant and the victim. The killing stemmed from a bizarre set of circumstances remote in time and space from the criminally negligent conduct of the defendant. The risk of death or serious harm could not have been reasonably foreseen from defendant's reckless utterances. In other words, the "scuffle" was an independent, intervening act that alone caused the victim's death.

Even though the issue of proximate cause is generally a question for the fact-finder, "when the facts are not disputed and are susceptible of but one inference, the question becomes one of law for the court." *Hubbard* v. *Murray*, 173 Va. 448, 457, 3 S.E.2d 397, 402 (1939), *cited in Delawder* v. *Commonwealth*, 214 Va. 55, 57, 196 S.E.2d 913, 915 (1973). This is such a case.

Accordingly, I would reverse the judgment of the Court of Appeals and dismiss the indictment.