COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, O'Brien and AtLee
Argued at Lexington, Virginia

UNPUBLISHED

PHILIP ALLEN CHAMBERS

MEMORANDUM OPINION[*] BY
v.      Record No. 0786-15-3      JUDGE RICHARD Y. ATLEE, JR.
                                   MAY 3, 2016

COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF AMHERST COUNTY
J. Michael Gamble, Judge

Herbert E. Taylor, III (The Law Offices of Herbert E. Taylor, III,
PLLC, on brief), for appellant.

Susan Baumgartner, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Philip Allen Chambers was convicted in a bench trial in the Circuit Court of Amherst

County ("the trial court") of "unlawfully and feloniously shoot[ing] at or throw[ing] a missile at"

an occupied dwelling, in violation of Code § 18.2-279. He asserts that the trial court erred by

"failing to give proper weight to the evidence presented showing that the discharge of the firearm

was an accident." We find no error and affirm the conviction.

BACKGROUND

Since the Commonwealth prevailed at trial, we view the facts in the light most favorable

to it on appeal. Bowman v. Commonwealth, 290 Va. 492, 494, 777 S.E.2d 851, 853 (2015).

"Viewing the record through this evidentiary prism requires us to 'discard the evidence of the

accused in conflict with that of the Commonwealth, and regard as true all the credible evidence

favorable to the Commonwealth and all fair inferences to be drawn therefrom.'" Id. (quoting

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

<u>Kelley v. Commonwealth</u>, 289 Va. 463, 467-68, 771 S.E.2d 672, 674 (2015)). In order to clearly analyze Chambers's claim that the evidence was insufficient, we will briefly summarize his version of the events as well.

The Commonwealth's evidence showed that in November of 2014, Lieutenant Davis and Deputy Jones, both from the Amherst County Sheriff's Office, responded to a 911 call reporting that Chambers was suicidal and had fired a gun inside his house. The officers spoke with Chambers's wife, then went upstairs and found Chambers asleep in bed.

Lieutenant Davis testified: "I observed a firearm, a thirty-eight, above his head. I . . . picked the weapon up and moved it to the top of the bed away from him. About the time I removed it from up there and put it on top, he woke up." Lieutenant Davis told Chambers that "he needed to go to the hospital. He state[d] he--he just wanted to die . . . ." When Lieutenant Davis asked about the gun, Chambers said "basically . . . he had the right to shoot in his house if he wanted to." (Lieutenant Davis conceded he could not remember "the exact words" Chambers used.)

Deputy Jones testified that a ".380 handgun was found on the left shelf next to [Chambers's] headboard" and "[o]n the top of the headboard was a .22 rifle." Both guns were within Chambers's reach. According to Deputy Jones, Chambers said "that his credit cards were maxed out, he was in poor health and various other reasons that he named off that he . . . didn't have reason to live." Deputy Jones saw a "bullet hole in the bedroom wall," that he believed was too large to be a .22 round, but instead was "about the size of a .380 round." When Deputy Jones asked Chambers about the hole in the wall, Chambers responded that "he put it there" and "he had the right to shoot the walls in his house if he wanted to."

Because the officers perceived Chambers to be at risk for self-harm, they placed him in custody, removed him from the home, and obtained an emergency custody order, through which

he was detained in a hospital for nearly two days. There was no evidence that any person other than Chambers and his wife were inside the house at the time the gun was fired. Several days later, when law enforcement officers returned to Chambers's home to serve a warrant on him, Chambers claimed that he had fired the gun accidentally.

Chambers testified that he was not suicidal and that his gun accidentally discharged while he was attempting to clear a round from the chamber. According to Chambers, after this accidental discharge, he called downstairs to his wife to reassure her that everything was okay, then carefully reholstered the gun. Chambers denied making any statement about firing the gun on the day the officers first responded to the home.

ANALYSIS

By statute, "the judgment of the trial court shall not be set aside unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it." Code § 8.01-680. Chambers challenges the sufficiency of the evidence against him, asserting that the trial court erred when it failed to give proper weight to evidence that the gun's discharge was accidental.[1] We find this argument unpersuasive.

---

[1] Chambers's assignment of error also has a second part, which alleges that "at the time that the firearm was discharged, the life of no one in the house was endangered or may have been placed in peril." He has waived this prong of his assignment due to his failure to raise this issue in the trial court. Rule 5A:18 states: "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice." For the first time at oral argument, Chambers invoked Rule 5A:18's "ends of justice" exception. We apply this exception only "to avoid a grave injustice or the denial of essential rights," Charles v. Commonwealth, 270 Va. 14, 17, 613 S.E.2d 432, 433 (2005), and only when the record shows "that a miscarriage of justice has occurred, not when it merely shows that a miscarriage *might* have occurred," Mounce v. Commonwealth, 4 Va. App. 433, 436, 357 S.E.2d 742, 744 (1987). Because we cannot say that a miscarriage of justice has occurred, we decline to employ Rule 5A:18's ends of justice exception. As a result, this opinion does not address whether any person was endangered by the discharge of the firearm.

The relevant portion of Code § 18.2-279 reads:

> If any person . . . maliciously shoots at, or maliciously throws any missile at or against any dwelling house or other building when occupied by one or more persons, whereby the life or lives of any such person or persons may be put in peril, the person so offending is guilty of a Class 4 felony . . . . If any such act be done unlawfully, but not maliciously, the person so offending is guilty of a Class 6 felony . . . .

Here, the indictment alleged that the crime was committed unlawfully.

The testimony of the witnesses presented two mutually exclusive narratives. The officers described a bullet hole in the wall and several firearms, all located near Chambers. They testified to admissions made by Chambers that, if believed, could lead a rational finder of fact to believe that Chambers had fired his gun intentionally. By contrast, Chambers testified that the gun discharged accidentally, and denied many of the statements ascribed to him by the Commonwealth.

Through his testimony, Chambers presented an alternative hypothesis of innocence: accident. On appeal, he points to portions of the record that might support his hypothesis, and asserts that the trial court was plainly wrong when it refused to accept it. However,

> [i]n considering an appellant's alternate hypothesis of innocence . . . , we must determine "not whether there is some evidence to support" the appellant's hypothesis of innocence, but, rather, "whether a reasonable [fact finder], upon consideration of all the evidence, could have rejected [the appellant's] theories in his defense and found him guilty of [the charged crime] beyond a reasonable doubt."

Emerson v. Commonwealth, 43 Va. App. 263, 277, 597 S.E.2d 242, 249 (2004) (second, third, and fourth alterations in original) (quoting Hudson v. Commonwealth, 265 Va. 505, 513, 578 S.E.2d 781, 785 (2003)). Put another way, when assessing Chambers's hypothesis, "the question is not whether 'some evidence' supports the hypothesis, but whether a rational factfinder could

have found that the incriminating evidence renders the hypothesis of innocence unreasonable."

Vasquez v. Commonwealth, ___ Va. ___, ___, 781 S.E.2d 920, 930 (2016).

By its decision, the trial court implicitly rejected Chambers's testimony, and with it, the explanation he offered. "Whether an alternate hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong." Emerson, 43 Va. App. at 277, 597 S.E.2d at 249 (quoting Archer v. Commonwealth, 26 Va. App. 1, 12-13, 492 S.E.2d 826, 832 (1997)). We see no plain error in the trial court's decision. See Clanton v. Commonwealth, 53 Va. App. 561, 573, 673 S.E.2d 904, 910 (2009) ("The trial court rejected this hypothesis as unreasonable, and we cannot conclude the fact finder arbitrarily chose one theory over another or that 'no rational fact finder would have come to that conclusion.'" (quoting Haskins v. Commonwealth, 44 Va. App. 1, 9, 602 S.E.2d 402, 406 (2004)). Other than Chambers's testimony at trial, the only evidence of an accidental shooting was the statement he gave days after the shooting. This statement was self-serving, and the trial court was free to reject it. Carosi v. Commonwealth, 280 Va. 545, 554-55, 701 S.E.2d 441, 446 (2010).[2]

"[T]he credibility of witnesses and the weight accorded their testimony are matters solely for the fact finder who has the opportunity of seeing and hearing the witnesses." Schneider v. Commonwealth, 230 Va. 379, 382, 337 S.E.2d 735, 736-37 (1985). Due to the limitations of appellate review, "[w]here credibility issues are resolved by the [fact finder] in favor of the

---

[2] Because we affirm Chambers's conviction based upon the trial court's finding that he fired the gun intentionally, we need not address the validity of the assumption underlying Chambers's argument (to the extent that it was preserved pursuant to Rule 5A:20), namely that a non-intentional discharge could not result in a violation of Code § 18.2-279. Prior cases might indicate otherwise. See, e.g. Scott v. Commonwealth, 58 Va. App. 35, 50, 707 S.E.2d 17, 25 (2011) (noting that "an 'unlawful' act includes the volitional performance of 'a lawful act in a criminally negligent manner'" (quoting Crowder v. Commonwealth, 16 Va. App. 382, 385, 429 S.E.2d 893, 894 (1993)); Gooden v. Commonwealth, 226 Va. 565, 571, 311 S.E.2d 780, 784 (1984) (observing that an otherwise lawful act may be deemed unlawful if performed in a criminally negligent manner).

Commonwealth, those findings will not be disturbed on appeal unless plainly wrong." Smith v. Commonwealth, 56 Va. App. 711, 718, 697 S.E.2d 14, 17 (2010). Both law enforcement officers testified that Chambers admitting putting the bullet hole in the wall, and both officers testified that Chambers stated that he had the right to shoot inside his house. The trial court resolved this conflicting testimony in the Commonwealth's favor. It was not plainly wrong when it credited the officers' testimony over Chambers's.

Just as we defer to a trial court's assessment of witness credibility, so too we defer to inferences drawn from the facts by a trial court. Ervin v. Commonwealth, 57 Va. App. 495, 503, 704 S.E.2d 135, 139 (2011). It is "the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Given the degree of deference with which we must assess the trial court's inferences, we cannot say it was plainly wrong when it inferred that the shooting was intentional.

The evidence showed that when officers arrived, there was a bullet hole in the wall near where Chambers was sleeping. Chambers admitted putting the bullet hole there, and asserted "the right to shoot the walls in his house if he wanted to." Chambers was despondent, and expressed a desire to die. Because any question about danger to occupants of the home has been waived, the only issue preserved for appeal is whether the shooting was intentional or accidental. The trial court was not plainly wrong when it found that the shooting was intentional and that such finding was supported by the evidence.

CONCLUSION

Chambers's argument that the trial court should have credited his testimony over the officers' is unpersuasive and belied by the evidence. As such, we find that the trial court's decision was not plainly wrong and was supported by the evidence. The conviction is affirmed.

Affirmed.